**Arthur S. ANDERSON, Plaintiff–Appellant,**

v.

**BAXTER HEALTHCARE CORP., Defendant–Appellee.**

No. 92–3482.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 29, 1993.

Decided Jan. 11, 1994.

Glen Edric Berman (argued), Vincent L. DiTommaso, DiTommaso & Berman, Oakbrook Terrace, IL, Thomas Wilson Waters, Kemp & Capanna, Oak Brook, IL, for plaintiff-appellant.

David J. Parsons, Dana S. Connell (argued), Kathryn A. Mrkonich, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Baxter Healthcare Corp.

Before FLAUM, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Arthur S. Anderson began working for Baxter Health Care Corporation as a mechanic in the maintenance department of Baxter's Morton Grove, Illinois facility on September 2, 1969. At the time of his discharge, Anderson, age 51, was unit manager for heating, ventilating, and air conditioning ("HVAC") at Baxter's Deerfield, Illinois facility. In that position, Anderson reported to K.C. Dhingra, manager of the Deerfield facility's energy systems/building maintenance department. Dhingra reported to Eugene Mellon, Director of Property Management for Baxter's McGaw Park and Deerfield facilities. When discharged, Anderson was the highest paid hourly maintenance worker at Baxter's Deerfield operation.

As unit manager, Anderson's responsibilities included ongoing and preventative maintenance of the HVAC system as well as responsibility for maintaining the electrical switch gear. Anderson was discharged in February, 1989 after several incidents occurred which Baxter contends "existed as a direct result of Anderson's inattentiveness to preventative maintenance and overall poor work performance."

The first of these incidents occurred in September 1988. An inspection sponsored by Baxter's insurance company revealed that a fire valve had been closed for months in Deerfield building # 3 and had not been properly identified as being closed in violation of fire marshal policy. As a result, the emergency water supply was not available. Mellon testified that he doubted whether Baxter's insurance company would have covered the loss if the building had burned. Anderson admitted that Mellon warned him about the seriousness of this incident.

Shortly after the 1988 inspection, a fire broke out in a housekeeping closet in Deerfield Building # 6. When the fire alarm was pulled, the annunciation system[1] failed to operate. An investigation revealed that the fuses in the fire alarm system had been pulled, causing the annunciation system to fail. Apparently the fuses were pulled because the smoke detectors in the building became extra sensitive during the winter, causing the fire alarm to go off frequently. Mellon testified that both Anderson and Dhingra had responsibility for maintaining the fire alarm system.

In January 1989, the main electrical breaker shorted out in Deerfield Building # 4 causing the building to be without heat for an entire day. Another investigation disclosed that Anderson had failed to have infra red scans performed on the high voltage switch gear in the breaker to ensure that it was operating properly. Dhingra had previously instructed Anderson to perform the infra red scans.

Finally, on January 23, 1989 a newly installed air handler motor in Deerfield Building # 6 shorted out, tripping the main breaker in the building. As a result, all power in the building was knocked out. Smoke from the short caused an employee to pull the fire alarm. All employees were then forced to evacuate the darkened building. Mellon testified in his deposition that another employee installed the motor but that Anderson was responsible for checking to see that it was operating properly. Mellon acknowledged that Anderson was not at work the day the motor was installed.

---

1. This system informs people that there is a fire in the building and provides them with appropriate instructions.

Because of this incident, Anderson was suspended pending an investigation. In February 1989, Mellon and Baxter Human Resources Representative Peggy Wielgos met with Anderson and told him that because of his overall poor performance in general and the January 23 incident in particular, the company had to terminate his employment.

Anderson then filed this case in the district court claiming that Baxter discriminated against him because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.* After the close of discovery, Baxter moved for summary judgment on the basis that Anderson had failed to raise a genuine issue of material fact as to his age discrimination claim. The district court agreed, finding that Baxter had articulated a legitimate non-discriminatory reason for Anderson's discharge and that Anderson could not show that Baxter's reason was a pretext for discrimination. This appeal followed.

### Standard of Review

We review *de novo* a district court's grant of summary judgment, viewing the record in the light most favorable to the non-moving party. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir.1992).

### Discussion

We spend some time discussing the legal framework applicable in age discrimination cases because there is a dispute between the parties as to the proper legal standard to be applied.

A plaintiff may prove age discrimination in one of two different ways. "She may try to meet her burden head on by presenting direct or circumstantial evidence that age was the determining factor in her discharge. Or, as is more common, she may utilize the indirect, burden-shifting method of proof for Title VII cases originally set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later adapted to age discrimination claims under the ADEA." *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 371 (7th Cir.1992) (quoting *Oxman v. WLS–TV,* 846 F.2d 448, 452 (7th Cir.1988)).

In order to prevail under the *McDonnell Douglas* burden-shifting approach, the plaintiff must initially establish a prima facie case of discrimination. In order to establish a prima facie case, the plaintiff must show: (1) she was a member of the protected class (age 40 or over), (2) she was doing the job well enough to meet her employer's legitimate expectations, (3) she was discharged or demoted, and (4) the employer sought a replacement for her. *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1039 (7th Cir.1993).

If the plaintiff succeeds in establishing a prima facie case, this creates a rebuttable presumption of discrimination, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's discharge. If the employer is successful, the presumption dissolves, and the burden shifts back to the employee to show that the employer's proffered reasons are a pretext for age discrimination. *Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 426–427 (7th Cir.1989).

The federal courts, however, have not been entirely clear on what constitutes a showing of pretext. Three competing rules have been developed. Two of these approaches have been referred to by one commentator as the "pretext-only" and "pretext-plus" rules. *See* Catherine J. Lanctot, *The Defendant Lies and the Plaintiff Loses: The Fallacy of the "Pretext–Plus" Rule in Employment Discrimination Cases,* 43 Hastings L.J. 57 (1991).

Under the "pretext-only" rule, if the plaintiff can successfully show that the reasons proffered by the employer for her discharge are factually false, then she is automatically entitled to a judgment in her favor. According to these courts, a finding by the district court that the employer's proffered justification is false "is itself *equivalent* to a finding that the employer intentionally discriminated." *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393, 1396 (3rd Cir.), *cert. denied,* 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984) (emphasis in original).

The second approach is a version of the "pretext-only" rule that has been adopted by

this circuit. Under this rule, "[i]f the employer offers a pretext—a phony reason—for why it fired the employee, then the trier of fact is permitted, although not compelled, to infer that the real reason was age." *Visser v. Packer Engineering Assoc., Inc.*, 924 F.2d 655, 657 (7th Cir.1991) (en banc) (citing *Shager v. Upjohn Co.*, 913 F.2d 398, 401 (7th Cir.1990)).

The third variation is "pretext-plus." The "pretext-plus" courts require more than a simple showing that the employers' proffered reasons are false. They require *both* a showing that the employer's reasons are false and direct evidence that the employer's real reasons were discriminatory. *See Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir.1990) ("In the final round of shifting burdens, it is up to plaintiff, unassisted by the original presumption, to show that the employer's stated reason 'was but a pretext for age discrimination.' To achieve this plateau, an ADEA plaintiff must do more than simply refute or cast doubt on the company's rationale for the adverse action. The plaintiff must also show a discriminatory animus based on age.") (citations omitted). *See also, Biggins v. Hazen Paper Co.*, 1993 WL 406515, *5, 1993 U.S.App. LEXIS 26865, *14 (1st Cir.1993).

In *Saint Mary's Honor Ctr. v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court recently addressed the issue of which of these competing pretext rules should be applied in discrimination cases. There, Hicks brought a Title VII action against St. Mary's alleging that he was illegally discharged because of his race. The district court found that Hicks had established a prima facie case and that St. Mary's had offered a non-discriminatory reason for Hicks' discharge. However, the district court, acting as the trier of fact, found that the reasons St. Mary's gave were not the real reasons for Hicks' discharge. The district court nonetheless held that Hicks had failed to meet his ultimate burden of proving that race was the determining factor in St. Mary's decision to discharge

him. The Eight Circuit reversed, holding that once the district court determined that St. Mary's proffered reasons for Hicks' discharge were false, and thus a pretext, Hicks was entitled to a judgment as a matter of law.

The Supreme Court reversed. It is clear that the Court rejected the "pretext-only" rule applied by the Eighth Circuit. While less clear,[2] it appears that the Court adopted this circuit's version of the "pretext-only" rule rather than the "pretext-plus" approach of the First Circuit.

The Supreme Court uses language in *Hicks* quite similar to language we applied in our opinion in *Visser:* "The fact-finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination and the Court of Appeals was correct when it noted that, upon such rejection, 'no additional proof of discrimination is *required.*'" *Id.* at ——, 113 S.Ct. at 2749 (footnote omitted) (emphasis in original). Moreover, other language in *Hicks* tracks similar discussions found in other cases in this circuit. E.g., *Pollard v. Rea Magnet Wire Corp.*, 824 F.2d 557 (7th Cir.1987) and *Benzies v. Illinois Department of Mental Health*, 810 F.2d 146 (7th Cir.1987).

In our view, the holding in *Hicks* is that a plaintiff is not entitled to judgment as a matter of law simply because she proves her prima facie case and shows that the employer's proffered reasons for her discharge are false. The next logical question is whether the plaintiff may prevail, not automatically as a matter of law, but through submission of her case to the ultimate factfinder, under such circumstances.

*Hicks* answers this question in the affirmative. The Court explicitly states that the plaintiff *may* prevail in a discrimination case by establishing a prima facie case and by

---

**2.** In his dissent, Justice Souter points out some internal inconsistencies in the majority opinion of the Court.

showing that the employer's proffered non-discriminatory reasons for her demotion or discharge are factually false. *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749. This "will permit the trier of fact to infer the ultimate fact of intentional discrimination." *Id.* "[N]o additional proof of discrimination is *required.*"[3] *Id.*

However, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at ——, 113 S.Ct. at 2747 (citation omitted). As such, the plaintiff might be well advised to present additional evidence of discrimination, because the factfinder is not *required* to find in her favor simply because she establishes a prima facie case and shows that the employer's proffered reasons are false.

■ Both *McDonnell Douglas* and *Hicks* speak to the burden the plaintiff bears at trial. However, for summary judgment purposes, the non-moving party, in this case the plaintiff, has a lesser burden. He must only "produce evidence from which a rational factfinder could infer that the company lied" about its proffered reasons for his dismissal. *Shager,* 913 F.2d at 401. As we said in *Shager,*

> [T]he question before us in reviewing the grant of summary judgment is only whether ... [the plaintiff] produced evidence from which a rational factfinder could infer that the company lied in saying that it fired ... [him] because he was an unsatisfactory worker. If the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one, such as age, may rationally be drawn. This is the common sense be-

hind *McDonnell Douglas....* The point is only that if the inference of improper motive *can* be drawn, there must be a trial.

*Id.* (emphasis in original).

■ Now that we have determined the proper legal standard to be applied, we proceed to apply it to the facts presented in this case. In resolving Baxter's summary judgment motion, the district court assumed that Anderson established a prima facie case of age discrimination, but found that Baxter offered a non-discriminatory reason for his discharge. According to Baxter, Anderson was discharged for performance deficiencies. Specifically, the four incidents described in detail in the beginning of this opinion. Anderson argued that the reason Baxter gave for his discharge was a pretext for age discrimination. The district court disagreed and granted Baxter's motion for summary judgment.

On appeal, Anderson challenges the district court's finding that he failed to present enough evidence to create a triable issue of fact as to whether Baxter's contention that he was fired for poor performance was a pretext for age discrimination.[4] Anderson relies on the deposition of former co-worker Ray Weimer and the affidavit of his former supervisor Dhingra to support his position. Weimer states in his deposition that several of the incidents that Baxter claims led to Anderson's discharge were not his fault. Weimer does not contend that the incidents did not happen. Rather, he states either that no person was at fault or that the incidents did not clearly fall within Anderson's area of responsibility. Dhingra states in his affidavit that he does not "believe that Bax-

---

3. As the dissent in *Hicks* points out, there is language in the Court's opinion that could support a finding that additional evidence of discrimination besides establishment of a prima facie case and rejection of the employer's proffered reasons for the plaintiff's discharge is *required* to prove intentional discrimination. However, such language is dicta. In rejecting application of this language, we are mindful of the Supreme Court's admonishment that it is "generally undesirable, where holdings of the Court are not at issue to dissect the sentences of the United States Reports as though they were the United States Code." *Hicks,* —— U.S. at ——, 113 S.Ct. at 2751.

4. Baxter argues that Anderson failed to establish a prima facie case because he was not qualified for his position at the time of his discharge, thus failing to meet element number three of the *McDonnell Douglas* prima facie case. We do not separately address this issue because we agree with the district court that it is intertwined with the issue of whether Anderson has met his burden of showing that Baxter's reasons for his discharge are pretextual.

ter fired Art Anderson for specific job performance inadequacies."

We agree with the district court that Weimer's deposition and Dhingra's affidavit are insufficient to defeat summary judgment. The mere submission of materials from a co-worker or supervisor indicating that an employee's performance is satisfactory, or more specifically that an employee's performance is satisfactory because he was not entirely responsible for several admitted mishaps, does not create a material issue of fact. *See Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1223 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981) (affirming the determination of the district court that affidavits of fellow employees stating that the plaintiff's performance was satisfactory was not enough to create a material issue of fact as to the quality of his work where employer felt that his work was unsatisfactory). *See also Williams v. Williams Elecs., Inc.,* 856 F.2d 920, 924 (7th Cir.1988) (former supervisor's affidavit that plaintiff's performance was satisfactory was not enough to create a genuine issue of material fact as to whether the employer honestly considered performance related factors in determining who would be laid off).

Moreover, Dhingra's conclusory statement that Anderson was not fired for performance inadequacies is not supported by any specific facts and is thus insufficient to create a genuine issue of material fact. *See Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992). Consequently, Anderson has failed to show that Baxter lied by claiming that he was fired for performance reasons.[5]

■ Anderson also argues that even if his job performance was indeed inadequate, it was not the *only* reason Baxter discharged him. Rather, Anderson argues, improper age discrimination was the but-for cause of his discharge. *See Visser,* 924 F.2d at 658 (plaintiff may prevail in an age discrimination case if he can show age discrimination was the but-for cause of his discharge even though the employer also had a permissible motive for his discharge). Anderson contends that Baxter committed age discrimina-

tion by firing him simply to reduce its salary costs. At the time of his discharge, Anderson was the "highest paid hourly worker" in the maintenance department at the Deerfield facility.

Anderson bases his claim on this court's decision in *Metz v. Transit Mix, Inc.,* 828 F.2d 1202 (7th Cir.1987). There, we held that it was age discrimination for an employer to discharge an older employee and replace him with a younger employee to reduce salary costs. Following our decision in *Metz,* however, a unanimous Supreme Court decided *Hazen Paper Co. v. Biggins,* — U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). In that case, the Supreme Court found that it was not age discrimination for an employer to fire a 62 year old employee to prevent the employee's pension benefits from vesting. The Court noted that the circuit courts "repeatedly have faced the question whether an employer violates the ADEA by acting on the basis of a factor, such as an employee's pension status or seniority, that is empirically correlated with age." *Id.* at ——, 113 S.Ct. at 1705 (citing conflicting circuit court cases including *Metz*). The Court went on to make it perfectly clear that "there is no disparate treatment under the ADEA when the factor motivating the employer is some other feature other than the employee's age." *Id.*

According to the Court, the ADEA was enacted by Congress because of "its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes." *Id.* at ——, 113 S.Ct. at 1706. However, "[w]hen the employer's decision *is* wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is." *Id.* (emphasis in original).

This rationale applies with equal force to cases where workers are discharged because of salary considerations. Thus, *Hazen Paper Co.* vindicates the dissent in *Metz* which contended that "[w]age discrimination is age discrimination only when wage depends directly

---

5. We will not discuss the other "evidence" Anderson offers to show pretext, because it is either totally irrelevant or actually contradicts Anderson's position.

on age, so that the use for one is a pretext for the other; high covariance is not sufficient...." *Metz*, 828 F.2d at 1212 (Easterbrook, J., dissenting). Compensation is typically correlated with age, just as pension benefits are. The correlation, however, is not perfect. A younger worker who has spent his entire career with the same employer may earn a higher salary than an older worker who has recently been hired by the same employer. "Because age and ... [compensation levels] are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on ... compensation level is necessarily 'age-based.'" *Id.* at ——, 113 S.Ct. at 1707. Consequently, Anderson could not prove age discrimination even if he was fired simply because Baxter desired to reduce its salary costs by discharging him.

Accordingly, we agree with the district court that Anderson has failed to show that Baxter's proffered reasons for his discharge were pretextual and has failed to meet his ultimate burden of proving intentional age discrimination.

### Conclusion

For all of the forgoing reasons the decision of the district court is AFFIRMED.