**Susana PERDOMO, Plaintiff,**

**v.**

**Carol BROWNER, Administrator, U.S. Environmental Protection Agency, Defendant.**

**No. 93 C 6468.**

United States District Court, N.D. Illinois, Eastern Division.

Aug. 26, 1994.

Paul E. Lehner, Marshall Lee Blankenship, Schuyler, Roche & Zwirner, Chicago, IL, for plaintiff.

Linda A. Wawzenski, U.S. Attys. Office, Chicago, IL, for defendant.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

This matter is before the court on defendant United States Environmental Protection Agency's ("EPA") motion for summary judgment. Plaintiff Susana Perdomo claims that Eric Cohen, her supervisor at EPA, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e *et seq.* ("Title VII"), by failing to recommend her for a promotion because she is Hispanic. For the following reasons, EPA's motion for summary judgment is granted.

### BACKGROUND

Perdomo graduated from law school in 1986 and began employment shortly thereafter at the Office of the Regional Counsel of EPA, Region 5, which employs approximately 109 attorneys (Cplt. ¶¶ 7–8; Plf. Stmt., ¶ 2). Region 5 is divided into three branches headed by branch chiefs; Perdomo worked at the Air, Water, Toxics, General Law branch ("AWTGL branch"), of which Eric Cohen is branch chief. AWTGL branch is divided into three sections supervised by section chiefs who report to Cohen.

Perdomo had not passed the bar exam when she started work in August 1986 and was therefore initially classified as a GS–11 law clerk. (Government employment positions are typically "graded" in accordance with position classification standards published by the U.S. Office of Personnel Management.) When Perdomo was admitted to the bar in October 1987, she was appointed to the position of general attorney, GS–11 (Plf.Stmt., ¶ 2). In March 1988, Eric Cohen, who was then Perdomo's section chief, recommended her for promotion to general attorney, GS–12. In September 1989, Cohen recommended Perdomo for promotion to general attorney, GS–13, although it is not clear from the record whether at that time he was her section chief or the acting AWTGL branch chief (Cplt, ¶ 10; Plf.Stmt., ¶ 24).

In December 1992, Gail Ginsberg, Regional Counsel for Region 5, received approval from the region administrator to create some non-supervisory general attorney GS–14 positions within Region 5 (Plf.Stmt., ¶ 6). Ginsberg asked the Region 5 branch chiefs, including Eric Cohen, to recommend persons in their branches who might be qualified for a GS–14 position (Plf.Stmt., ¶ 8). In response to Ginsberg's request, Cohen consulted with the three section chiefs in AWTGL branch, Catherine Fox, Stephen Mendoza, and Sandra Lee, and thereby developed a list of attorneys within the branch who were eligible or would soon be eligible for promotion. Persons classified as GS–13 for two years within the next year and having satisfactory performance records were eligible for promotion to GS–14 (Plf.Stmt., ¶ 9). Under these criteria, five GS–13 lawyers in AWGTL branch were eligible for promotion: Perdomo, Susan Tennenbaum, Monica Smyth, Janice Loughlin, and Michael Graves (Plf.Stmt., ¶ 10).

Cohen then asked his section chiefs to recommend persons from this list whom they believed should receive the promotion to general attorney, GS–14. Fox recommended Loughlin and Tennenbaum, Lee recom-

mended Loughlin, Tennenbaum and Graves, and Mendoza recommended Perdomo only (Plf.Stmt., ¶ 11; Cohen Dep., p. 145). On or around December 16, 1992, Cohen referred Loughlin and Tennenbaum to Regional Counsel Ginsberg as the nominations from AWTGL branch for promotion to GS–14. When Ginsberg approved these nominations, Cohen asked Section Chief Catherine Fox to prepare "justification memos" for Tennenbaum and Loughlin. The justification memos set forth the basis upon which EPA headquarters approves the promotion (Plf.Stmt., ¶ 74).

Mendoza, Perdomo's section chief, learned on January 19, 1993 that Tennenbaum and Loughlin had been selected for GS–14 classification when he heard Cohen ask Fox to prepare the justification memos (Plf.Stmt., ¶ 75). According to plaintiff, Mendoza asked Cohen to reconsider his decision not to promote Perdomo; Cohen allegedly said he would reconsider if Mendoza prepared a justification memo showing how Perdomo qualified for GS–14 classification under the Hardy criteria (Plf.Stmt., ¶ 77). Although Mendoza and Perdomo prepared a justification memo for Perdomo which Cohen reviewed, Cohen did not change his decision (Plf.Stmt., ¶ 79). On February 11, 1993, the Region 5 administrator gave the final approval for Loughlin and Tennenbaum to be promoted to GS–14 (Plf.Stmt., ¶¶ 12, 13).

Perdomo believes that she was more qualified for the GS–14 promotion than either Tennenbaum or Loughlin. She claims that Cohen did not refer her for the promotion because she is Hispanic and that this is disparate treatment because of her race and/or national origin (Cplt., ¶ 37). EPA responds that Cohen did not discriminate against Perdomo but made his decision because he believed that although Perdomo was eligible for a GS–14 position, she was not qualified for one (Ans., ¶ 37; Def.Stmt., ¶ 17). Cohen also stated at his deposition that he believed that Tennenbaum and Loughlin were best qualified for promotion to GS–14.

Perdomo argues that the reasons Cohen states for not promoting her are pretextual (Plf.Mem., pp. 7–12). First, Perdomo claims that not only was she qualified for a GS–14 position, but also that she was more qualified than Tennenbaum and Loughlin (Perdomo Dep., p. 45). She points out that at the time of the GS–14 promotions, she had received better evaluations and more performance awards than Tennenbaum or Loughlin and that she had worked at EPA almost three years longer than Tennenbaum and four and-a-half years longer than Loughlin (Cplt., ¶ 33, 34). Perdomo also asserts that Cohen's motivation is suspect because he did not follow EPA guidelines during the promotion selection process [1] (Plf.Mem., p. 4). From this evidence, Perdomo surmises that the "only other reason" she was not promoted is that Cohen discriminated against her because she is Hispanic (Perdomo Dep., p. 45). She does not present sufficient evidence to withstand EPA's motion for summary judgment.

### DISCUSSION

#### A. *Summary Judgment Standards*

Rule 56 of the Federal Rules of Civil Procedure entitles a party to summary judgment if the pleadings, depositions, answers to interrogatories and affidavits establish that there is no genuine issue of material fact for trial. Fed.R.Civ.P. 56(c). There is no genuine issue of material fact for trial where the record shows that a rational trier of fact could not find for the non-moving party. *United Ass'n of Black Landscapers v. City of*

---

1. The EPA guidelines at issue are set forth in a memorandum issued by Clarence Hardy, former Director of Personnel at EPA, on November 18, 1987 (referred to as the "Hardy memo" or the "Hardy criteria"). EPA claims that the Hardy criteria are used to *classify* GS–14 non-supervisory attorney *positions*, and not necessarily to *select* which *attorneys* are deserving of a promotion to GS–14. EPA asserts that while Cohen considers the Hardy criteria as part of the evaluation process, there are no mandatory criteria for selecting attorneys for GS–14 promotions (EPA mem., p. 4; Ans., ¶ 27).

Plaintiff, on the other hand, claims that the Hardy memo sets forth objective criteria that *should* be considered in classifying an *attorney* as GS–14, but that Cohen "employs a more subjective process in making selections for GS–14 promotions" (Cplt., ¶¶ 26, 27). This court will address the parties' dispute regarding the Hardy criteria below.

*Milwaukee,* 916 F.2d 1261 (7th Cir.1990). Accordingly, if the court determines that a plaintiff has no evidence to prove an essential element of a case in which he has the burden of proof, the defendant's motion for summary judgment may be granted. *Id.* at 1264; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## B. *Burden of Proof*

■ In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court allocated the burden of proof in employment discrimination cases as follows: if the plaintiff establishes a *prima facie* case of employment discrimination, the employer must then state a "legitimate, nondiscriminatory reason" for the adverse employment action. *Id.; Saint Mary's Honor Ctr. v. Hicks,* — U.S. —, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The employer's burden is one of production only; merely articulating a legitimate reason for the action rebuts the presumption of intentional discrimination created by the plaintiff's prima facie case. *Id.* at —, 113 S.Ct. at 2747; *Dale v. Chicago Tribune Company,* 797 F.2d 458 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). If the employer meets his burden of production, the burden shifts back to the plaintiff to prove that the employer's explanation is actually a pretext for discrimination. *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1122 (7th Cir.1994). To satisfy his burden the plaintiff must prove both that the reason offered by the employer for his action is false *and* that discrimination was the real reason for the action taken. *Hicks,* — U.S. at —, 113 S.Ct. at 2752. It is not enough to disbelieve the employer's explanation; there must also be a finding of discrimination. *Id.*

As EPA assumes for purposes of its motion that Perdomo has established a *prima facie* case of employment discrimination, this court need not address that issue (Def.Mem., p. 7).[2] Accordingly, it must be determined

whether EPA has articulated a legitimate reason why Cohen did not recommend Perdomo for promotion, and, if so, whether Perdomo has demonstrated that the evidence raises a genuine issue as to whether Cohen's actions were a pretext for discrimination. *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (opponent to summary judgment must affirmatively demonstrate by specific factual showing that a genuine issue of fact requires trial).

■ The reasons Cohen states for not recommending Perdomo for the GS–14 promotion satisfy EPA's burden of production. Cohen testified at his deposition that while Perdomo was *eligible* in December 1992 for classification as a GS–14, he did not think she was *qualified* to do the work of a GS–14 attorney (Cohen Dep., p. 42). Cohen's deposition testimony and EPA's interrogatory responses reveal Cohen's belief that (1) Perdomo did not have legal expertise sufficient to give GS–14 level advice regarding certain environmental statutes; (2) Perdomo did not have the ability to analyze complex legal problems at that level; and (3) the other candidates had better litigation skills (Cohen Dep., pp. 51–109). While Cohen believed that Perdomo performed well as a GS–13 attorney, the performance records of the selectees, Tennenbaum and Loughlin, demonstrated that they were the best qualified attorneys in AWTGL branch for promotion to GS–14 (Cohen Dep., pp. 155–56). In making his decision Cohen also considered Loughlin's and Tennenbaum's broad legal experience as well as the input of the three section chiefs, two of whom nominated Loughlin and Tennenbaum (Cohen Dep., pp. 144–45; Cohen Aff., pp. 2–3).

■ Perdomo claims that a factual issue exists regarding whether Cohen's statement that she was not qualified for a GS–14 position is pretextual (Plf.Mem., p. 7). She refers to evidence showing that she was qualified for the promotion and sets forth a

---

**2.** To establish a prima facie case of discrimination, a plaintiff must show (1) that she was a member of a protected class; (2) that she was qualified for the position; (3) that she was not selected despite her qualifications; and (4) that

the employer selected an individual for the position who was not a member of the protected class of the plaintiff. *McDonnell Douglas, supra; Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

lengthy discussion of her performance record, describing her legal successes and the praise she has merited. She also argues the following: (1) that her litigation skills were comparable to those of Tennenbaum and Loughlin, and that overall she was actually more qualified than either of them; (2) that Cohen listed only three cases in which he believed she did not offer sound legal advice, and that in fact she handled those cases successfully; (3) that Cohen could cite only one example of her purported lack of analytical skills, and that was uncertain at best; (4) that EPA admits that Perdomo's work met the criteria of the Hardy memo, but that Cohen did not follow the guidelines set forth in the Hardy memo; and (5) that there is other circumstantial evidence of discrimination.

None of Perdomo's arguments speaks to the issue of Cohen's alleged discrimination—she has offered no direct evidence that Cohen discriminated against her because she is Hispanic. On the contrary, the record shows that since Perdomo started at EPA, Cohen twice recommended that she be promoted. Moreover, Steven Mendoza, a Hispanic male who is Perdomo's section chief, testified that he had never heard Cohen say anything that he perceived as being racist or discriminatory, and that he did not know of any actions by EPA which he believed to be discriminatory towards Hispanics (Mendoza Dep., pp. 114, 118).

■ Perdomo has cited no evidence rebutting Cohen's statements regarding his beliefs about Perdomo's skills or his assessment that Tennenbaum and Loughlin were best qualified for the promotion. Plaintiff's evaluations and performance record suggest that she is a very good lawyer who is extremely well thought of by her superiors and clients. Indeed, the totality of Cohen's testimony evidences not so much a belief that plaintiff was not then qualified as it does a conclusion that she was not quite as ready to be a GS-14 or that she was not quite as seasoned as the other two, who had had considerable private practice experience—not that he was negative about plaintiff but that he was less positive about her than he was about the other two. It may be that Cohen did not review

Perdomo's record as thoroughly as he might have before making his decision regarding the GS-14 promotions. But even if Cohen's belief as to the level of Perdomo's analytical or advisory capacities is inaccurate, and Perdomo's skills are better than Cohen claims, this does not prove that Cohen lied about his belief that she was not as qualified or that he discriminated against her because she is Hispanic. That an employer made an incorrect or ill-informed decision is not automatically evidence of pretext, especially where, as here, the plaintiff offers no direct evidence of discriminatory intent. *Billups v. Methodist Hosp. of Chicago*, 922 F.2d 1300 (7th Cir. 1991).

Whether Perdomo is more qualified than Tennenbaum or Loughlin is neither here nor there. A reasonable trier of fact could find nothing suspicious in Cohen's choice of Tennenbaum and Loughlin over Perdomo. While Perdomo had been at EPA longer than either of them, Tennenbaum and Loughlin had been practicing law about four years and two years longer, respectively, than Perdomo. Both were highly recommended by Catherine Fox, one of the AWTGL branch section chiefs, and Sandra Lee, another section chief, concurred with Fox. Even if Perdomo was more qualified than Tennenbaum or Loughlin—of which this court is unconvinced—this still does not suggest Cohen discriminated. *See Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (employer may pass over one applicant in favor of others who are not clearly superior without discriminating).

Perdomo's assertion that Cohen ignored the advice of her section chief, Stephen Mendoza, does not provide much support for plaintiff's position. Cohen requested that Mendoza recommend persons who were eligible for promotion and Mendoza's recommendation, Perdomo, was considered. That Cohen did not accept Mendoza's recommendation of Perdomo, but instead followed the recommendations of the other section chiefs, does not mean he discriminated against Perdomo.

Whether Cohen used the Hardy criteria in deciding which attorneys to recommend for

promotion to GS–14 has little to do with the ultimate issue of his alleged discrimination against Perdomo. The Hardy memo states that it is meant to provide "EPA-specific criteria for the classification of nonsupervisory grade 13 and 14 regional attorney positions" (Cplt., Exh. A, p. 1). Nothing in the Hardy memo obligates EPA supervisors to apply it word-for-word when deciding whether to promote a certain attorney. That Cohen considered the Hardy criteria as only part of the evaluation process and also relied on his subjective opinion does not suggest discriminatory intent. *See Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 429 (7th Cir.1989) (mere fact that employer's beliefs were based on subjective factors fails to establish that their assessment of employee's skills were made in bad faith); *Dorsch v. L.B. Foster Co.,* 782 F.2d 1421, 1427 (7th Cir.1986) (a "subjective qualification assessment does not convert an otherwise legitimate reason into an illegitimate one"). While an employer's use of subjective criteria to make an employment decision may be a subterfuge for discrimination, there is simply nothing in the record to suggest as much.

Plaintiff's arguments regarding supposed "circumstantial evidence of discrimination" are unpersuasive (Plf.Memo, pp. 14–15). A reasonable jury could not find that Cohen discriminated against Perdomo based on evidence that her section chief (who is Hispanic) did not lunch regularly with Cohen, or that the three Hispanic AWTGL branch attorneys all worked in the same section (which had been Cohen's). *See Pollard v. Rea Magnet Wire Co., Inc.,* 824 F.2d 557 (7th Cir.1987) (discussing types of circumstantial or indirect evidence suggesting disparate treatment).

Perdomo cites *Anderson* and *Hicks* to argue that to survive EPA's motion for summary judgment she need only present evidence that Cohen's explanation of his actions is pretextual (Plf.Mem., p. 2). This court does not dispute the language in *Anderson* that to withstand summary judgment an employee must "only 'produce evidence from which a rational fact could infer that the company lied about its proffered reasons'.... If the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one ... may rationally be drawn...." *Anderson,* 13 F.3d at 1124, *citing Shager v. Upjohn Co.,* 913 F.2d 398, 401 (7th Cir.1990). We do not, however, believe that Perdomo has demonstrated that EPA or Cohen lied about the reasons she was not promoted. Perdomo argues that by showing that she was qualified for a GS–14 position, she has demonstrated that Cohen lied when he stated she was not qualified for the position. At most, Perdomo's evidence suggests that Cohen's promotion decision was not as informed or considered as it could have been. This is neither evidence that Cohen lied about the reason for his decision, nor evidence that he discriminated against Perdomo because she is Hispanic. *Billups,* 922 F.2d 1300.

Moreover, even assuming that Cohen dissembled about his reasons for not promoting Perdomo, there is no evidence that his real reason was discriminatory. *Hicks* emphatically confirms that a plaintiff bringing a Title VII action bears the burden of persuasion at all times. That is, plaintiff must show "*both* that the reason was false *and* that discrimination was the real reason." *Hicks,* —— U.S. at ——, 113 S.Ct. at 2752. As stated above, the record does not demonstrate that Cohen lied about the reasons he passed over Perdomo in favor of Tennenbaum and Loughlin. Considering the record as a whole, and construing the evidence in Perdomo's favor, Perdomo does not provide evidence of the second requirement discussed in *Hicks,* that is, that Cohen did not select her for promotion because she is Hispanic. *See Palucki v. Sears, Roebuck & Company,* 879 F.2d 1568 (7th Cir.1989) (plaintiff does not automatically secure right to trial by rebutting employer's explanation of unfavorable treatment; district court must determine whether plaintiff could persuade reasonable jury that employer discriminated); *Pollard v. Rea Magnet Wire Co., Inc.,* 824 F.2d 557, 559 (7th Cir. 1987) ("Showing that the employer dissembled is not necessarily the same as showing pretext for discrimination ... plaintiff must show a causal chain in which race or another forbidden criterion plays a dispositive role").

### CONCLUSION

Summary judgment is inappropriate in many cases involving issues of discrimina-

tory intent and motive, which are often very difficult to establish. *See McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 370–71 (7th Cir.1992) (standard for summary judgment should be applied with added rigor in employment discrimination cases). This court has conducted a thorough review of the pleadings, deposition testimony, affidavits and other materials contained in the record in this case, and concludes that they reveal no statement or action by Cohen or any other EPA employee suggesting that discrimination occurred in the GS–14 selection process.[3] The record suggests that Cohen had to choose between several qualified individuals, and that Perdomo was disappointed that he did not choose her. Although Perdomo's disappointment is understandable, the record does not support her claim that Cohen did not promote her because she is Hispanic.[4] *See Dale*, 797 F.2d at 465 (plaintiff "should not be allowed to proceed with a case on the mere hope that trial would produce evidence he was unable to garner at the state of summary judgment").

For the reasons set forth above, defendant's motion for summary judgment is granted.

---

3. The court notes that EPA's summary judgment motion was extremely well briefed by both parties, and compliments the lawyering of counsel for plaintiff and defendant.

4. Monica Smyth, a white female, also protested after she was not selected for the GS–14 promotion. *See* Smyth Affidavit.