70 F.3d 119
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Denise CURTIS-LOCICERO; Shin Chong Yong, Plaintiffs-Appellants,
v.
GANNETT OUTDOOR COMPANY, INC., of Southern California;
Local Union # 831, Sign, Scene, Pictorial
Painters, Display And Decorators
I.B.P.A.T. AFL-CIO,
Defendants-Appellees.
 No. 93-56114.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 7, 1995.*
Decided Aug. 15, 1995.
 
 Before: THOMPSON, LEAVY, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Denise Curtis-Locicero and Shin Chong Yong appeal the district court's grant of summary judgment in favor of Gannett Outdoor Company, Inc. ("Gannett") and Local Union 831, Sign, Scene, Pictorial Painters, and Display Decorators ("Local 831"), in Ms. Locicero and Mr. Shin's lawsuit alleging various employment related claims in connection with Gannett's implementation of a work force reduction. Ms. Locicero maintains that Gannett's decision to terminate her employment was the result of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. ("Title VII"). Ms. Locicero also asserts a claim pursuant to section 301(a) of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a), alleging that Gannett's decision to terminate her employment breached the collective bargaining agreement ("CBA"). Mr. Shin alleges he was laid-off by Gannett on account of his age, and challenges the district court's determination that he failed to timely file a claim with the Equal Employment Opportunity Commission ("EEOC") as required by Sec. 626(d) of the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 et seq. ("ADEA").
 
 
 3
 We have jurisdiction over this timely appeal pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 STANDARD OF REVIEW
 
 4
 A grant of summary judgment is reviewed de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). Id.
 
 DISCUSSION
 
 5
 * Ms. Locicero argues that genuine issues of material fact regarding her Title VII claim make a grant of summary judgment inappropriate.
 
 
 6
 To survive a summary judgment motion, a plaintiff asserting a claim under Title VII must first establish a prima facie case of discrimination. Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994). Establishment of a prima facie case creates a presumption of unlawful discrimination, and the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Id. Once the employer fulfills this burden of production by offering a legitimate nondiscriminatory reason for its employment decision, the presumption of unlawful discrimination "simply drops out of the picture." Id. (internal quotations omitted). The presumption having dropped out of the picture, the plaintiff's evidence must be sufficient to permit a rational trier of fact to find that the employer intentionally discriminated against the plaintiff. Id. at 892.
 
 
 7
 In determining whether there is triable issue of fact, we must consider all the evidence, including evidence offered to establish the prima facie case, as well as evidence submitted to show the employer's proffered reason for the adverse employment decision is a pretext for another, discriminatory motive. Id. at 889, 892. "[T]here will always be a question for the factfinder once a plaintiff establishes a prima facie case and raises a genuine issue as to whether the employer's explanation for its action is true." Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir.1993); see also Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 (7th Cir.1994) (explaining that after making out a prima facie case the plaintiff "must only produce evidence from which a rational factfinder could infer that the company lied about its proffered reasons for his dismissal" (internal quotations omitted)). However, "[i]n response to the defendant's offer of nondiscriminatory reasons, the plaintiff must produce specific, substantial evidence of pretext." Wallis, 26 F.3d at 890 (internal quotations omitted).
 
 
 8
 The district court concluded, and the parties do not dispute, that Ms. Locicero made out a prima facie case of discrimination. Ms. Locicero is a member of a protected class and she was discharged from a job for which she was qualified while others not in her protected class were retained. See Washington, 10 F.3d at 1434 (articulating the elements of a prima facie case under Title VII where a reduction in the work force is alleged to have been carried out in a discriminatory fashion).
 
 
 9
 The parties also do not dispute that Gannett met its burden of producing legitimate, nondiscriminatory reasons for Ms. Locicero's layoff. Pursuant to Addendum A of the CBA, Gannett was permitted to layoff up to ten employees based on a consideration of the employee's 1) comparative skills and artistic abilities, 2) seniority, and 3) comparative performance, discipline, attendance, and production capability. In accordance with the authority provided to the company by Addendum A, Vice President William J. Ripp asked manager Allen A. Rossi and supervisor Toni Lopez to recommend independently nine employees who should be included in the company's layoff. Both Mr. Rossi and Ms. Lopez selected Ms. Locicero.
 
 
 10
 Ms. Lopez chose Ms. Locicero after referring "to the criteria in Addendum A to the Contract and the skill sets which were a breakdown of the criteria in Addendum A." ER Tab 37 at 2-3. Ms. Lopez also noted that as paint studio supervisor she had received numerous complaints from other billboard artist about Ms. Locicero's disruptive conduct. Specifically, employees Jose Colocho, Lalo Palacios, and Ralph Valencia "each complained, on several occasions ... that LoCicero would sing loudly and break into very loud laughing. They complained that LoCicero's actions destroyed their concentration on their work and made them less productive. I verbally counselled LoCicero about her disruptive behavior on two occasions during 1991." ER Tab 37 at 2.
 
 
 11
 Mr. Ripp "selected LoCicero because her relative skill, ability and experience was less than the other artists. In addition, I was aware of complaints regarding LoCicero's conduct in the workplace, which included shouting matches with other employees, loud constant singing and loud laughing attacks at her workstation." Gannett's SER Tab 2 at 3.
 
 
 12
 Mr. Ripp, together with Mr. Rossi and Ms. Lopez, reviewed the joint list of identified employees and considered each person on the basis of the criteria in Addendum A. They "reviewed the employees' comparative attendance figures, disciplinary warning information, artistic abilities and skills, performance, production capability, flexibility, and seniority." Gannett's SER Tab 1 at 4. The final list was submitted to Gannett President John Martin, who approved it. Ms. Locicero, a journeyman painter, was one of seven billboard artists laid-off, and the only female; two other female journeymen were retained.
 
 
 13
 Because Gannett fulfilled its burden of production by offering a legitimate, nondiscriminatory reason for its employment decision, the issue on appeal is whether Ms. Locicero raised a genuine issue of material fact as to pretext. See Wallis, 26 F.3d at 892. We conclude, that on the evidence submitted, Ms. Locicero failed to refute Gannett's reasons for her discharge and therefore failed to carry her burden of establishing a triable issue of fact on the ultimate question of whether Gannett intentionally discriminated against her. See id.
 
 
 14
 Ms. Locicero offers no direct evidence showing Gannett's employment decision was motivated by an effort to discriminate on the basis of sex. Instead, Ms. Locicero submits several affidavits which she claims would allow a jury to infer the unlawful motive underlying Gannett's action. In the first affidavit, Ms. Locicero declares she is as qualified as the artists retained and, while admitting to a disruptive episode involving Maria Gonzalez, states she was never written up for any disciplinary action. Ms. Locicero's subjective personal judgments concerning her skills do not raise a genuine issue of material fact. Schuler v. Chronicle Broadcasting Co., Inc., 793 F.2d 1010, 1011 (9th Cir.1986). Ms. Locicero's observation that her file is free of disciplinary actions does not controvert Ms. Lopez and Mr. Rossi's sworn statements that several of Ms. Locicero's fellow employees repeatedly complained of her disruptive behavior.
 
 
 15
 Next, Ms. Locicero points to the affidavits of former artists David Arthur Medore, Tony Scalese, and Walter Modern Stewart, who all state that Ms. Locicero was more qualified than some retained artists and that Ms. Locicero was no more disruptive than other employees. These declarations, however, only serve to demonstrate that reasonable persons can differ when assessing artistic ability or disruptive behavior. To survive summary judgment, Ms. Locicero must do more--she must show the reasons asserted by Gannett for her discharge are a pretext for sex discrimination; at a minimum she must submit enough evidence to permit a rational trier of fact to find that Gannett's explanation for dismissal is not true. Washington, 10 F.3d at 1433. Contrary assessments of the discharged employee's performance do not undermine the legitimacy of the employer's justification for the business decision. Anderson, 13 F.3d at 1125. An employer's mistaken belief, ill-informed opinion, or misguided assessment simply are not grounds for inferring a Title VII violation. See id.
 
 
 16
 Finally, Ms. Locicero focuses on Mr. Rossi's statement that prior to the layoff he considered Ms. Locicero "promotable from Journeyman to Pictorial Artist based on her artistic ability." Gannett's SER Tab 2 at 4. We cannot agree with Ms. Locicero that this statement by Mr. Rossi is inconsistent with Gannett's proffered reasons for her discharge. In recommending Ms. Locicero for dismissal, Mr. Rossi considered not only her artistic ability, but her relative experience and disruptive behavior as well. Moreover, Mr. Rossi was only one of four Gannett officials involved in the process of identifying employees who, under the criteria allowed by Addendum A, were eligible for layoff. Under these circumstances, the fact that prior to Gannett's efforts to implement Addendum A, Mr. Rossi considered Ms. Locicero potentially promotable, is not enough standing alone to allow a finding that Gannett's explanation for discharging Ms. Locicero is pretextual.
 
 
 17
 Our consideration of the relevant record reveals no genuine issues of material fact; the district court properly granted summary judgment on Ms. Locicero's Title VII claim.
 
 II
 
 18
 Ms. Locicero also sought to bring a section 301 claim against Gannett for breach of the CBA. See Labor Management Relations Act, 29 U.S.C. Sec. 185(a). However, before an employee is entitled to judicial review of a section 301 breach of contract claim, the employee must demonstrate she has exhausted the contractually provided grievance procedures. Vaca v. Sipes, 386 U.S. 171, 184 (1967). Ms. Locicero concedes she never filed a grievance regarding her layoff. She asserts, however, that in her case the exhaustion requirement should be excused because her failure to file a grievance was due to the union's breach of its duty of fair representation. See id. at 185. Specifically, Ms. Locicero claims that Local 831 general secretary Grant Mitchell prevented her from filing a grievance by opining "it would be futile because of the broad discretion of Addendum A." ER Tab 46 at 23.
 
 
 19
 "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." Vaca, 386 at 190. We will assume, without deciding, that Mr. Mitchell's statement "caused" Ms. Locicero to refrain from filing the grievance. Even so, Ms. Locicero has failed to introduce any competent evidence showing that Mr. Mitchell made the statement in bad faith or with discriminatory intent, and such a statement, as a matter of law, does not rise to the level of being arbitrary. "We have never held that a union has acted in an arbitrary manner where the challenged conduct involved the union's judgment as to how best to handle a grievance." Peterson v. Kennedy, 771 F.2d 1244, 1254 (9th Cir.1985), cert. denied, 475 U.S. 1122 (1986). The evidence does not suggest that Mr. Mitchell did anything other than interpret the scope of Addendum A and apply it to the facts of Ms. Locicero's dismissal, from which he concluded a grievance would not succeed. We will not "attempt to second-guess a union's judgment when a good faith, non-discriminatory judgment has in fact been made." Id.
 
 
 20
 The district court properly granted summary judgment on Ms. Locicero's section 301 claim.
 
 III
 
 21
 Mr. Shin asserts his dismissal by Gannett was the result of age discrimination in violation of the ADEA. In order to bring such a claim in federal district court, the plaintiff must demonstrate he filed a charge with the EEOC within 300 days after the alleged unlawful practice occurred. ADEA Sec. 626(d); Title VII Sec. 2000e-5(e). "This circuit treats this notice requirement as a statute of limitations." Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 675 (9th Cir.1988). A charge is deemed to be filed with the EEOC upon receipt of the document. 29 C.F.R. Sec. 1601.13(a)(4)(ii)(A); Taylor v. General Tel. Co. of the Southwest, 759 F.2d 437, 440 (5th Cir.1985).
 
 
 22
 All the parties agree, and the EEOC concurs, that Mr. Shin filed a charge on July 16, 1992. This filing, however, occurred more than 300 days after Mr. Shin was discharged. Mr. Shin claims to have filed a handwritten affidavit of age discrimination on June 19, 1992, 289 days after the effective date of his layoff. In his sworn statement, Mr. Donald Burris, deputy director of the Los Angeles District Office of the EEOC, explains that a charge is filed by his office once it is received, and that the only charge filed by Mr. Shin occurred on July 16, 1992. Gannett's SER Tab 3 at 1.
 
 
 23
 Mr. Shin offers no competent evidence to show the EEOC received his charge prior to the expiration of the 300 day period. Accordingly, Mr. Shin's claim is time-barred. See Pejic, 840 F.2d at 675.
 
 CONCLUSION
 
 24
 The district court's order granting summary judgment for all defendants is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3