**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KAREN THAI,
Plaintiff-Appellant,

v.                                                                    No. 97-1553

INTEREALTY CORPORATION,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-96-1525-A)

Argued: March 2, 1998

Decided: September 22, 1998

Before HAMILTON, Circuit Judge, BUTZNER, Senior
Circuit Judge, and MOON, United States District Judge
for the Western District of Virginia,
sitting by designation.

_____

Affirmed by unpublished opinion. Senior Judge Butzner wrote the
opinion, in which Judge Hamilton and Judge Moon joined.

_____

**COUNSEL**

**ARGUED:** Michael Patrick Deeds, KESTELL & ASSOCIATES,
Falls Church, Virginia, for Appellant. Kevin Charles McCormick,
WHITEFORD, TAYLOR & PRESTON, Baltimore, Maryland, for
Appellee. **ON BRIEF:** James L. Kestell, KESTELL & ASSO-

CIATES, Falls Church, Virginia, for Appellant. Andrew J. Terrell, WHITEFORD, TAYLOR & PRESTON, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

BUTZNER, Senior Circuit Judge:

Karen Thai appeals the district court's grant of summary judgment to Interealty Corporation. Thai filed claims of national origin discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and violations of the Fair Labor Standards Act (FLSA) overtime provisions, 29 U.S.C. § 207 et seq. The parties settled the FLSA claim, and Thai appealed the district's judgment of her discrimination claim. We affirm.

I

Thai brought this action against Interealty alleging that she was terminated due to her national origin, which is Vietnamese. Thai was employed as an accounting clerk by Planning Research Corporation (PRC) in February of 1988. She was promoted to the position of Accountant I in 1989, and she remained in that position until 1994, when she became a Financial Reporting Staff Accountant.

As an Accountant I and as a Financial Reporting Staff Accountant, Thai was primarily an intercompany accountant. As such, she was responsible for reconciling intercompany bank accounts. During this time Thai's performance was always characterized as very good and she exceeded job requirements. In 1995, PRC was sold by its parent company, Black & Decker, and became the stand-alone company, Interealty.

2

Interealty, as a stand-alone company, no longer required an inter-company accountant. The company assigned Thai the responsibility of reconciling several of Interealty's bank accounts. During this time period Thai's work load increased for several reasons. First, the employee who carried the bulk of the workload in Thai's section left the company. Second, Interealty acquired a new company, Realtron Corp., that Thai's department was responsible for assimilating into Interealty. Third, Interealty's separation from Black & Decker increased Thai's tasks. Interealty's financial reporting underwent substantial changes, and its cash management, treasury, insurance, and accounting policies were revised. The accurate and timely completion of the bank reconciliation became a necessary component of the success of these new management policies. Without the bank reconciliations, Interealty was unable to keep track of the money it had in its accounts and could not accurately pay its vendors or undertake other commitments.

After Black & Decker sold PRC, Thai was unable to reconcile Interealty's accounts in a timely manner. She claims that this was because she had problems obtaining the necessary information from other managers. By June of 1995, Kevin Reichard, Thai's immediate supervisor, was concerned about Thai's inability to complete the reconciliations on time. Reichard met with Thai in August of 1995 to review her progress in reconciling the accounts. At that time she had not reconciled the accounts for April, May, June, and July. During this meeting Reichard required Thai reconcile all outstanding accounts by September 22. On September 22, 1995, Thai had failed to complete the bank reconciliations. Reichard informed Thai that her progress was unsatisfactory and gave Thai a deadline of October 20, 1995, to be "completely caught up." Reichard's notes from this meeting indicate that Thai had not sufficiently taken responsibility for her work and that she had not adapted to the different work her position now required.

On October 11, 1995, Thai met with Reichard and Michelle Brown, the Accounting and Operations Manager, to discuss the bank reconciliations. During this meeting Thai's inability to understand the new banking arrangements and her limited ability to obtain the information in a usable format were discussed. Thai was still using a Black & Decker format that was inadequate for obtaining the information

3

Thai needed to complete her bank account reconciliations. Brown also explained to Thai that based on Thai's experience and salary level she was expected to finish the assignments in the time allowed. Also in October of 1995, Sioni Cockrell was hired to review Thai's work and assist her. Within three days, Cockrell developed a new, satisfactory format.

On October 20, Thai met with Brown and Reichard and stated that she had completed everything except the payroll account. She stated that the payroll account was incomplete because she could not get the appropriate information and because there were errors from July that needed to be corrected. On October 24, 1995, Brown recommended that Thai be terminated, stating:

> Based on [Thai's] performance since the sale of PRC . . . the number of missed deadlines, the critical nature of BASIC bank reconciliations, her inability to productively adapt to the change in the environment, her inability to effectively communicate issues and problems, her inadequate under-standing of the purpose and nature of her position, and her inability to step up to the additional responsibilities required in the new organization, I recommend that Karen Thai's employment . . . be terminated, immediately.

J.A. 452. Reichard discharged Thai on October 26, 1995. An American-born woman replaced her.

In an effort to establish that her discharge was discriminatory, Thai showed that Brown managed 25 people. Of the six foreign-born employees, three, including Thai, were discharged. Two other foreign-born employees were threatened with discharge. Only one American-born employee was discharged.

II

Appellate review of an award of summary judgment is de novo. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc). Summary judgment is only appropriate when the moving party shows that there is no genuine issue of material fact and that the moving

4

party is entitled judgment as a matter of law. Fed.R.Civ.P. 56(c); Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 973 (4th Cir. 1990). In reviewing the record we draw all inferences in favor of the party opposing summary judgment. Haavistola v. Community Fire Co. of Rising Son Inc., 6 F.3d 211, 214 (4th Cir. 1993). A mere scintilla of evidence supporting the opposing party's case, however, is insufficient to defeat summary judgment. Shaw v. Stroud, 13 F.3d 791, 798 (1994). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no `genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), established the basic allocation of proof and the order of presentation of evidence to determine whether an employer intentionally discriminated against an employee. In Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981), and in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993), the Court applied the McDonnell Douglas framework to the discharge of an employee. The employee must first establish a prima facie case by showing that she belongs to a protected class, she was qualified for the position, meeting her employer's legitimate expectations, and she was discharged under circumstances giving rise to an inference of discrimination. Then the employer has the burden of producing a legitimate, nondiscriminatory reason for the discharge. The burden shifts back to the employee, who then has an opportunity to demonstrate that the employer's reasons are pretextual. See Burdine , 450 U.S. at 252-56; and Hicks, 509 U.S. at 505-12. Although at one point the burden of production of evidence is placed on the employer, the ultimate burden of proving intentional discrimination remains on the employee. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714-16 (1983).

III

The district court wrote:

> It is not clear that plaintiff could demonstrate the second element of the prima facie case, which is that her performance at the time of termination met her employer's legitimate expectations. Assuming, however, that plaintiff could dem-

5

onstrate a prima facie case of discrimination, defendant has articulated a legitimate, nondiscriminatory reason for the termination, and plaintiff has made no sufficient showing that such reason is pretextual to create a genuine issue of material fact. . . . The only evidence that would support her claim of pretext is that four other foreign-born employees were either terminated, threatened with termination, or given reduced job duties. Without more, this evidence is speculative and insufficient to create a genuine issue of material fact regarding pretext.

J.A. 638-39.

Thai tried to show that there are genuine issues of material fact sufficient to defeat Interealty's motion for summary judgment. Thai emphasizes that the company discharged three foreign-born employees and threatened two others with discharge in order to show that she was discharged because of her national origin. But in her deposition, Thai admitted that she never reviewed the employees' work and that she had no firsthand knowledge about why they were discharged or compelled to resign.

Thai insists that her exemplary work record at PRC indicates that Interealty's reasons for firing her were pretextual. Past performance normally favors an employee, see Norris v. Hartmanx Specialty Stores, Inc., 913 F.2d 253 (5th Cir. 1990), but in this case it is of marginal relevance. When Black & Decker sold PRC, Thai's duties and responsibilities changed. The evidence discloses that she was unable to cope with her new work. Her job became more complex, and she repeatedly missed deadlines.

Thai also placed the blame for her unsatisfactory performance on others, complaining that she did not promptly receive the dates she needed. However, Thai did not develop a new format for completing bank reconciliations, although her supervisor requested that she do so. A new employee was able to develop such a format within three days. Finally, the suggestion that Thai was not entirely responsible for delays does not raise a material issue of fact. See Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1125 (7th Cir. 1994).

6

The evidence discloses that Interealty did not intentionally discriminate against Thai because of her national origin, and its reasons for discharging Thai were not pretextual. We affirm the district court's judgment.

AFFIRMED

7