47 F.3d 1173
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Doris MOTZNY, Plaintiff-Appellant,
v.
HILANDER FOOD STORES, Defendant-Appellee.
 No. 94-1996.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 14, 1994.
Decided Jan. 17, 1995.
 
 Before COFFEY, RIPPLE and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Doris Motzny brought this discrimination suit under the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621-634, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e, against her former employer, Hilander Food Stores ("Hilander"), alleging that while she was employed by Hilander she was not allowed to regularly work overtime because of her sex and that she was discharged or not transferred because of her age. Hilander filed a motion for summary judgment to which Motzny did not respond. Fed.R.Civ.P. 56(c). The district court granted the motion in favor of the employer. Motzny appeals, and we affirm.
 
 I. Background
 
 2
 Motzny began her employment with Hilander in 1982 when Hilander hired her as a part-time clerk in the deli department of Hilander's North Main store in Winnebago County, Illinois. She transferred to Hilander's Mulford store in Rockford, Illinois six months later, and assumed the full-time position of deli manager. She was 43 years old at the time. Motzny worked without incident at that position for six and one-half years until Terry Kobernat became Motzny's immediate supervisor in 1989 and had a different opinion as to how to manage the deli department.
 
 
 3
 In June 1990 Kobernat met with Motzny and presented her with a list of job-related items which included "no hats"--a reference to Motzny's failure to wear a hat or hair net while working behind the deli counter, "soup kettles"--a reference to Motzny and Kobernat's prior conflict concerning the placement of a soup kettle, and "potato salad"--a reference to the fact that the deli had run out of potato salad during a prior holiday. The parties disputed as to what exactly transpired at that meeting and whether Motzny voluntarily resigned during the meeting. According to Kobernat, he told Motzny that they were to go through the items on the list but Motzny threw the list on his desk and walked out, stating "I don't have to listen to or take this." Motzny, on the other hand, characterized the events as follows: Kobernat told her at the meeting that he could not work with her any longer and that he was going to let her go. She then threw the paper back at Kobernat and asked, "Why, Because I don't wear a hat?" Kobernat responded, "it's not over the hat. It's not over the soup kettle. I just can't work with you any more."
 
 
 4
 One week later, Motzny contacted one of Hilander's owners, John Castrogiovanni, to inquire about the possibility of transferring to another store. Later, the deli manager of Hilander's North Main store telephoned Motzny and discussed placing her on the work schedule of that store. Sometime later, however, Castrogiovanni told Motzny that she would not be transferred because her salary was too high and that several part-time clerks would need to be discharged to accommodate her salary. Motzny was 51 years old at the time.
 
 
 5
 Motzny's position was filled by another female employee, who was 39 years old at the time. During her later job search, Motzny obtained two letters of recommendation: one from Nick Ancona, who was Hilander's director of purchasing, and the other from Castrogiovanni. Castrogiovanni wrote that Motzny was an excellent employee and deli manager and that she was trusted and loyal. He also wrote, "Store Manager and Doris have personality conflicts." Ancona wrote in the recommendation that Motzny had displayed the leadership and responsibility that was appreciated by Hilander and that Motzny would be a valued employee for any employer.
 
 II. Analysis
 
 6
 We review a grant of summary judgment de novo, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), viewing the record and the inferences drawn from it in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). We will affirm if there is no genuine issue of material fact such that judgment is proper as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Also, the summary judgment standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. Robinson v. PPG Indus., Inc., 23 F.3d 1159, 1162 (7th Cir.1994); Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993). Because Motzny did not respond to Highlander's motion for summary judgment, we will treat as admitted the uncontroverted facts alleged by Highlander. See Stewart v. McGinnis, 5 F.3d 1031, 1034-35 (7th Cir.1993).
 
 
 7
 In order to prove age and sex discrimination under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the employee must first establish a prima facie case of discrimination to create a rebuttable presumption of discrimination. See Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122 (7th Cir.1994). The burden then shifts to the employer to articulate legitimate, nondiscriminatory reasons for the challenged employment action. Id. If the employer is successful, the presumption dissolves, and the burden of production shifts back to the employee. Id. Although the employee bears the ultimate burden of proving that age or sex was the determining factor behind the employer's action, see Saint Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742 (1993), for purposes of defeating a summary judgment motion the employee, who has met the prima facie case, must only produce evidence from which a rational fact-finder could infer that the employer's proffered reasons were pretextual. Anderson, 13 F.3d at 1124; see also Visser v. Packer Eng'g Associates., Inc., 924 F.2d 655, 660 (7th Cir.1991) (en banc ). That is, the employee must offer evidence showing either that the employer's proffered explanations are unworthy of credence or that a discriminatory reason more likely motivated the employer. Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); Robinson, 23 F.3d at 1163; Oxman v. WLS-TV, 846 F.2d 448, 456 (7th Cir.1988).
 
 
 8
 Hilander concedes that Motzny has established a prima facie case of age discrimination as to the discharge claim. Hilander has provided a legitimate business reason for Motzny's discharge: Motzny was discharged due to her personality conflicts with the store manager Kobernat. Particularly, Motzny and Kobernat had differing philosophies regarding the management of the deli department. For instance, they disagreed as to whether Motzny should wear a hat/hair net while working behind the deli counter, where the soup kettle should be placed, and when to post deli clerks' work schedule. In support of its claim that Motzny was discharged because of her problematic working relationship with Kobernat, Hilander points to a letter of recommendation Motzny received from Hilander in which the store owner Castrogiovanni wrote that Motzny was an excellent employee and deli manager but that "Store Manager and Doris have personality conflicts."
 
 
 9
 Because Motzny has offered no direct evidence of age discrimination, the question is whether Motzny has produced evidence from which a reasonable juror could infer that Hilander lied about its proffered business reason for discharging her. Anderson, 13 F.3d at 1124; Shager v. Upjohn Co., 913 F.2d 398, 400-01 (7th Cir.1990). Apparently due to a belief that the business reason proffered by Hilander concerned the adequacy of her performance, Motzny focuses only on establishing that performance was not the reason for her discharge. She has produced nothing to show that Hilander used her personality conflicts with Kobernat as a pretext for age discrimination. She does not contest that Kobernat had difficulty working with her nor does she attempt to show that Hilander lied about the particular disagreements she had with Kobernat. In fact, she claims that when Kobernat handed her the list of items over which they had disagreements, Kobernat told her that he was going to let her go not because of their particular disputes over the soup kettle or whether she should wear a hat, but because he just could not work with her any longer. Motzny's own account of the events is consistent with Hilander's explanation that Motzny was terminated because of her problematic working relationship with Kobernat.
 
 
 10
 Motzny's reliance on the letter of recommendation she received from Hilander's director of purchasing, Nick Ancona, does not help her case. The letter, consistent with Hilander's explanation that Motzny was not discharged for performance reasons, merely stated that Motzny's job performance was appreciated by Hilander and that Motzny would be a valued employee for any employer. Perhaps Motzny felt that she was an excellent worker and therefore, should not have been discharged. However, that alone is insufficient to show pretext--it does not rebut Hilander's claim that Kobernat had difficulty managing Motzny. Cf. Lindsey v. Baxter Healthcare Corp., 962 F.2d 586, 588 (7th Cir.1992) ("[t]he fact that the [adverse employment] decision may have reflected a philosophy of personnel management with which the plaintiff's lawyer disagrees cuts no ice at all"), cert. denied, 113 S.Ct. 442 (1992). In fact, had Hilander contended that Motzny was discharged for performance reasons, a letter of recommendation from a former supervisor would not be sufficient to create a material issue of fact as to whether the employer honestly felt that the employee's work was unsatisfactory. Cf. Anderson, 13 F.3d at 1125 (deposition of former co-worker or affidavit of former supervisor indicating that plaintiff's job performance was satisfactory did not create a material issue of fact as to whether plaintiff was really discharged for performance reasons). Motzny has produced nothing to show that Hilander's proffered business reason for discharging her lacks credence, and thus, her discriminatory discharge claim must fail.
 
 
 11
 Although Motzny also argued before the district court that Hilander failed to transfer her to a different store because of her age, she appears to have abandoned the issue on appeal. Or at least, she makes no attempt to refute Hilander's explanation that several part-time employees would need to be discharged in order to accommodate Motzny's $10.50 an hour salary. It is true that an employee's salary tends to increase with his or her age, making age and compensation highly correlated. See Hazen Paper Co. v. Biggins, 113 S.Ct. 1701, 1706 (1993). But that does not make an employer's salary consideration improper unless wage depends directly on age such that the use of one is a pretext for the other. See Anderson, 13 F.3d at 1125-26; see also Equal Employment Opportunity Commission v. G-K-G, Inc., No. 93-2275, slip op. 7-8 (7th Cir. Nov. 4, 1994). Motzny has failed to make that showing, and thus cannot succeed in her discriminatory refusal to transfer claim.
 
 
 12
 Finally, Motzny claims that while employed by Hilander, she was not allowed to work over-time (other than during certain holidays) because of her sex. According to Motzny, none of the female managers she knew were allowed to work overtime and when they did work overtime, they were reprimanded. Hilander maintains, however, that managers are scheduled to work overtime only when their particular departments require it or when they have assumed extra duties that require overtime such as opening or closing the store. It argues, and the district court agreed, that Motzny's claim is in essence one for discrimination in denying promotion because she was essentially complaining that she was not given those positions that require overtime. Because Motzny did not apply for those managerial positions or otherwise sought opening and closing responsibilities, Hilander's argument continues, Motzny has failed to establish a prima facie case of discrimination for refusal to promote which requires a showing that the plaintiff applied for the position sought.[1]
 
 
 13
 We do not think that Motzny's denial of overtime claim automatically translates into a refusal to promote claim as characterized by Hilander. It is possible that the assignment of overtime hours does not depend on an employee's job title. That is, Hilander could have simply refused to assign Motzny overtime work because of her sex rather than because of the particular position she occupied. Although it was unclear whether Motzny had asked for the specific responsibility of opening and closing the store which would require overtime, it was not disputed that she did request to work overtime and was capable of doing so. Thus, the inquiry is whether Hilander had legitimate business reasons for not giving Motzny overtime assignments. Hilander submits that store policy allows regular overtime only when the manager's duties regularly require him or her to work more than 40 hours per week. For instance, produce managers and dairy managers at each of Hilander's store regularly work overtime because of the nature and the timing of product deliveries, whereas managers of the deli departments and meat departments are expected to perform their duties within the 40-hour work week. Significantly, all four of Hilander's meat department managers are male. Hilander claims that although a manger may also regularly be scheduled to work more than 40 hours a week if assigned the extra responsibility of opening or closing the store, such responsibility is only given to managers whose duties do not involve setting up or putting away perishable items at the beginning and the end of the day. Thus, the responsibility is not assigned to managers of the deli, fish, bakery or meat departments but is given to store managers, assistant managers and grocery managers. Hilander claims that all four male managers of the meat departments are subjected to the above rule and that at least one female manager had held the responsibility of opening and closing the store.
 
 
 14
 Again, Motzny has produced no evidence to rebut the business reasons proffered by Hilander. She simply argues she was available to work overtime without interfering with her regular responsibilities as she was expected to perform her duties within the 40 hour week. Motzny's argument misses the point. An employer is not required to create new duties to accommodate an employee's wishes simply because the employee belongs to a protected group under the ADEA or Title VII. See Tice v. Lampert Yards, Inc., 761 F.2d 1210, 1217-18 (7th Cir.1985). As the district court found, Motzny has failed to show that Hilander's explanation for the manner in which it assigns overtime work is untrue or a pretextual for discrimination. See Sarsha, 3 F.3d at 1035 (where the non-moving party bears the burden of proof on an issue, she may not rest on the pleading, but must affirmatively demonstrate by specific factual allegations that there is a genuine issue for trial). Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 In order to establish a prima facie case of discrimination for refusal to promote in Title VII actions, a plaintiff must establish that (1) she belongs to a protected group, (2) she applied for and was qualified for the position, (3) she was rejected, and (4) the employer promoted someone from outside the protected class. See Von Zuckerstein v. Argonne Nat. Laboratory, 984 F.2d 1467, 1472-73 (7th Cir.), cert. denied, 114 S.Ct. 419 (1993); Hughes v. Derwinski, 967 F.2d 1168, 1171 (7th Cir.1992)