# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 2000 Session

## DARLENE VERSA v. POLICY STUDIES, INC.

**Appeal from the Circuit Court for McMinn County**
**No. 22458     Lawrence H. Puckett, Judge**

**FILED AUGUST 25, 2000**

**No. E2000-00030-COA-R3-CV**

---

The plaintiff, an African-American female, brought this employment discrimination action against her employer, Policy Studies, Inc. The employer filed a motion for summary judgment with supporting material. The trial court granted the motion, finding that the plaintiff had failed to demonstrate that there was a genuine issue of material fact on the question of whether the employer had a legitimate non-discriminatory reason for terminating her. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Kenneth O. Fritz, Chattanooga, Tennessee, for the appellant, Darlene Versa.

David F. Harrod, Athens, Tennessee; Andrew W. Loewi and Jeanine M. Anderson, Denver, Colorado, for the appellee Policy Studies, Inc.

## OPINION

### I.

The defendant, Policy Studies, Inc., doing business as Child Support Services of Tennessee ("PSI"), provides child support enforcement services to the State of Tennessee in McMinn and Monroe counties. PSI hired the plaintiff, Darlene Versa, to work as an Intake Specialist[1] in PSI's Athens, Tennessee, office. Versa was hired by Pamela S. Gard, the Athens' Office Program

---

[1]In general, Intake Specialists take telephone calls from clients about cases, open new cases, and put information about new cases into PSI's computer system.

Manager, upon the recommendation of Judy Williams, a PSI Order Specialist.[2] PSI was handling an active child support case on behalf of Williams at the time. PSI instructed Williams not to involve herself in her own case and instructed other staff members that they were not to give Williams' case any special treatment.

During Versa's tenure as a PSI employee, she received several commendations and promotions. In early January, 1998, Gard was notified of a problem with Williams' case. She investigated and learned that the employer of Williams' ex-husband had called PSI seeking clarification of a recently transmitted Income Assessment Order ("IA"). Versa, who had taken the call, relayed the message to Kim Bernard. Upon returning the call, Bernard learned that the employer had received an IA that did not correspond with the IA that Bernard herself had prepared.[3] Bernard asked the employer to fax her a copy of the IA it had received. The IA faxed to her called for a withholding of $210 per month plus a $15.75 payment on an arrearage, while the IA that Bernard had prepared called for a withholding of $105 per month and did not include an arrearage. Bernard then informed Gard of her conclusion that her IA had been intercepted and another substituted in its place and sent to the employer.

On January 7, 1998, Gard questioned Williams. Initially, Williams stated that she knew an incorrect IA had been sent to her former husband's employer but that she did not send it. Upon being asked who was involved, she said, "Well, I'll just say that I did it."

Gard conferred with PSI's Human Resources Director and advocated, as part of a progressive disciplinary scheme, a two-week suspension without pay. Instead, the Human Resources Director instructed Gard to terminate Williams, and Gard did so on January 8, 1998.

Gard authored a memo on January 12, 1998, which stated that she could "find no evidence which verifies participation by any other employee to the action on Dec. 23, 1997 which brought about the termination of Judy Williams." However, two of Williams' friends informed Gard that they had talked with Williams about her termination and that Williams had intimated that Versa was involved. Upon receiving this information, Gard spoke to Versa, who denied involvement.

On January 14, 1998, Gard announced to the staff that PSI would begin an investigation and that Jayne Welch, a computer administrator for PSI, would be coming later that day to search for evidence on the computer system. When Welch arrived, she accessed the computer system through the terminal in Williams' vacant office. Welch utilized the identity code ADMIN, the only code that allowed access to the entire system. No one in the Athens' office was authorized to use this identification. She learned that the IA at issue had not been saved when it was altered and that

_____

[2] Order Specialists attend court sessions with PSI's staff attorneys and prepare appropriate orders for the court.

[3] Apparently, this was not the first time an incorrect IA had been prepared in Williams' case. Several years prior to the incident just described, another employee had prepared an incorrect IA, and Gard had signed it. The IA was prepared by Karin Ware, who was a new employee at the time, in reliance on a written agreement between Williams and her ex-husband that was included in the Williams file but not filed with the court.

therefore she would be unable to determine the identity of the person who had altered it. She informed Gard, and no one else, of this fact. Welch was then called away to more pressing business and left the building. Believing that she would return shortly, she did not log out of the system. Failing to protect a "userid/password combination" from exposure to unauthorized persons is a violation of PSI's Code of Ethics.

That evening, only three people remained in the office after 5:00 p.m. Two of them left "probably at about 5:15 p.m., but certainly no later than 5:30 p.m." Versa was alone in the office from the time the other two left until approximately 6:30 p.m.

The next morning, a PSI employee found that she could not access the two computer directories containing most of the office's important documents. Welch returned and found, to her surprise, that the terminal in Williams' office had been turned off. Upon logging in, Welch determined that the missing directories had first been relocated and then deleted. After restoring the missing data from a tape back-up, Welch found that the last user to access either of the directories in question was someone using the ADMIN identification and that the final access was obtained beginning at 5:28 p.m. on January 14, 1998. No other users were logged in at the time.

Based on the preceding information, Welch drew the following conclusions and communicated them to Gard:

1. the directories were deleted by someone working at the terminal in Williams' office, which she had left logged on as "ADMIN";

2. the deletion occurred after 5:28 p.m. on January 14, 1998, after all other users had logged out of the system; and

3. the deletion was intentional.[4]

Based on the information from Welch and the fact that Versa was alone in the office after 5:30 p.m., PSI terminated Versa on January 19, 1998, "for attempting to delete the [files] for our office, apparently in an attempt to destroy evidence of the altered I/A that had been created for Ms. Williams on December 23, 1997."

On June 24, 1998, Versa brought suit against PSI alleging, *inter alia*, unlawful discrimination. The trial court granted PSI's motion for summary judgment, finding that Versa failed to produce evidence that PSI's proffered legitimate non-discriminatory reason for terminating Versa was pretextual. More specifically, it held that the "record shows the defendant's action (1)

---

[4]Welch's conclusion that the directories were intentionally deleted is based on the following facts: (1) the directories were moved before their deletions; (2) the system utilizes a "prompt" which requires the user to confirm his or her intent to delete the material in question; and (3) deleted material normally is retained in a "recycle bin," but in this instance the directories had been deleted from the recycle bin as well.

has a basis in fact which (2) actually motivated the termination, and (3) was sufficient to motivate the termination."

## II.

In order to determine whether summary judgment is appropriate under the circumstances of this case, we must first address the body of law relevant to Versa's claim.

## A.

Where a plaintiff alleging racial discrimination is unable to present direct evidence of discrimination, the following analytical framework applies:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for [its actions.]" [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d (1973).] Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id*., at 804, 93 S. Ct. at 1825.[5]

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981).

Both parties agree that Versa has established a prima facie case of discrimination and that PSI has proffered a legitimate, non-discriminatory reason for terminating Versa. Therefore, the dispute before us now is whether Versa has carried her burden of showing that PSI's proffered reason for terminating her was pretextual.

---

[5]This analytical framework applies to the instant appeal despite the fact that *McDonnell Douglas* and *Burdine* were actions brought pursuant to Title VII of the Civil Rights Act of 1964, which is now codified at 42 U.S.C. § 2000e *et seq*. Versa's claims, as far as they are relevant to the instant appeal, were brought under T.C.A. § 4-21-401 (1998), which is part of the Tennessee Human Rights Act, *see* T.C.A. § 4-21-101 *et seq*. ("THRA"), and 42 U.S.C. § 1981 (1994). T.C.A. § 4-21-101(a)(1) provides that the purpose of the THRA is to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972...." Our Supreme Court has accordingly relied on Title VII case law to resolve questions brought under the THRA. *See, e.g., Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996). Similarly, the Sixth Circuit has held that claims brought under 42 U.S.C. § 1981 are subject to the same analytical framework as are Title VII claims. *See Hollins v. Atlantic Co.*, 188 F.3d 652, 658 (6th Cir. 1999). Therefore, the analytical framework enunciated in *McDonnell Douglas* and *Burdine* applies to Versa's claims at issue on this appeal.

A plaintiff may establish pretext in one of three ways: by showing "(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [the employee's] discharge, or (3) that they were *insufficient* to motivate discharge." ***Manzer v. Diamond Shamrock Chems. Co.***, 29 F.3d 1078, 1084 (6th Cir. 1994) (quoting ***McNabola v. Chicago Transit Auth.***, 10 F.3d 501, 513 (7th Cir. 1993)) (emphasis in ***Manzer***).

An employer's proffered reason for termination of an employee has no *basis in fact* if "the employer's proffered non-discriminatory reasons for [the employee's] demotion or discharge are factually false." ***Anderson v. Baxter Heathcare Corp.***, 13 F.3d 1120, 1123-24 (7th Cir. 1994); *see also* ***Manzer***, 29 F.3d at 1084 (citing ***Baxter Healthcare***). The question is not whether the employer's decision was sound, but whether the employer's asserted reason for the adverse employment decision is pretextual. ***In re Lewis***, 845 F.2d 624, 633 (6th Cir. 1988). The reasonableness of an employer's decision may be considered, but only so far as it "illuminates the employer's motivations." ***Id***. "The more questionable the employer's reason, the easier it will be for the jury to expose it as pretext." ***Id***. Thus, on summary judgment, a non-moving plaintiff must "produce evidence from which a rational factfinder could infer that the company lied about its proffered reasons for [the employee's] dismissal." ***Baxter Healthcare***, 13 F.3d at 1124 (internal quotations omitted).

In attempting to show that a defendant's proffered reason did not *actually* motivate discharge, a plaintiff may either (1) produce evidence that the adverse employment decision was more likely motivated by discrimination, or (2) show that the employer's explanation is not credible. ***Kline v. Tennessee Valley Auth.***, 128 F.3d 337, 342-43 (6th Cir. 1997).

To show that a defendant's proffered reason is *insufficient* to motivate discharge, a plaintiff must produce "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." ***Manzer***, 29 F.3d at 1084. Moreover,

> [i]t is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated *in all respects*. Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

***Mitchell v. Toledo Hosp.***, 964 F.2d 577, 583 (6th Cir. 1992) (citation omitted) (emphasis in original).

B.

Having examined the relevant law pertaining to the plaintiff's cause of action, we must now determine whether summary judgment for PSI is appropriate under the record now before us. In deciding whether a grant of summary judgment is appropriate, courts are to determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56.04, Tenn. R. Civ. P. Courts "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 210-211 (Tenn. 1993).

Thus, the questions a court must consider in determining whether to grant or deny a motion for summary judgment are (1) whether a factual dispute exists; (2) whether that fact is material; and (3) whether that fact creates a genuine issue for trial. *Id*. at 214. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Id*. at 215. A disputed material fact creates a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id*. The phrase "genuine issue" refers exclusively to factual issues and not to legal conclusions that could be drawn from the facts. *Id*. at 211.

The party seeking summary judgment has the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. *Id*. at 215. Generally, a defendant seeking summary judgment may meet this burden in one of two ways: (1) by affirmatively negating an essential element of the plaintiff's case, or (2) by conclusively establishing an affirmative defense. *Id*. at 215 n. 5. "A conclusory assertion that the nonmoving party has no evidence is clearly insufficient." *Id*. at 215.

Once the moving party satisfies its burden of showing that there is no genuine issue of material fact, the burden then shifts to the nonmoving party to show that there is a genuine issue of material fact requiring submission to the trier of fact. *Id*. The nonmoving party cannot simply rely upon its pleadings, but rather must set forth, by affidavit or discovery materials, specific facts showing a genuine issue of material fact for trial. Rule 56.06, Tenn. R. Civ. P.; *Byrd*, 847 S.W.2d at 215. The evidence offered by the nonmoving party must be admissible at trial but need not be in admissible form. It must be taken as true. *Byrd*, 847 S.W.2d at 215-16.

In employment discrimination cases, the summary judgment analysis must be applied "at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000). Because the parties agree that Versa has established a prima facie case of discrimination and that PSI has proffered a legitimate, non-discriminatory reason for terminating Versa, we are only concerned here with the third stage of the *McDonnell Douglas* inquiry. With regard to this stage -- the plaintiff's burden to show pretext -- the standard to be applied on summary judgment is that the plaintiff must only "produce evidence from which a rational factfinder could infer that the company lied about its proffered reasons for [the employee's] dismissal." *Baxter*

*Healthcare*, 13 F.3d at 1124 (internal quotations omitted). "If the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one…may rationally be drawn. This is the common sense behind the rule of *McDonnell Douglas*….The point is only that if the inference of improper motive *can* be drawn, there must be a trial." *Shager v. Upjohn Co.*, 913 F.2d 398, 401 (7th Cir. 1990).

III.

A.

Versa first argues that PSI's proffered reason for terminating her has no basis in fact. More specifically, she argues that the files could have been deleted after she left on January 14, 1998, or early the next morning before she arrived and that PSI's conclusion that Versa deleted the files is based upon subjective speculation and conjecture. Her argument concludes that a genuine issue of material fact exists as to the question whether she in fact deleted the files.

We disagree. PSI terminated Versa based on the following facts:

> (1) the files were deleted by someone logged in under the user identity "ADMIN";
>
> (2) the computer administrator had logged into the system as "ADMIN" through the terminal in Williams' office and had left the office without logging out;
>
> (3) the files were deleted after 5:28 p.m. on January 14, 1998, after all other users had logged out of the system;
>
> (4) the deletion was intentional because the directories were moved before they were deleted; the system prompts users to confirm their intent to delete files; deleted files are normally retained in the "recycle bin", but the files had been deleted from this area as well; and
>
> (5) Versa was the only person in the office from "probably...about 5:15 p.m., but certainly no later than 5:30 p.m." to approximately 6:30 p.m. on January 14, 1998.

Because these facts are undisputed, PSI has carried its summary judgment burden of showing that there is no genuine issue of material fact relating to the question of whether its proffered reason for terminating Versa is pretextual. Therefore, it has effectively shifted the burden to Versa to show that a genuine issue of material fact exists by producing evidence from which a rational factfinder could infer that PSI lied about its proffered reason for terminating her. This she has not done. Whether

Versa in fact deleted the files may be a disputed fact, but it is not material in the context of this summary judgment analysis. Even if taken as true, Versa's denial that she deleted the files does not speak to the specific factual grounds upon which PSI based its conclusion that she did delete the files, and it therefore does not illuminate PSI's motivations. Her denial renders PSI's conclusion that she deleted the files more questionable, but it does not constitute evidence from which a rational factfinder could infer that PSI lied about its reason for terminating Versa. In short, her denial does not bear on the question of pretext. Hence, she has failed to establish a genuine issue of material fact regarding the question of whether PSI's proffered reason had a basis in fact.

B.

Versa also argues that the trial court erred in finding that she failed to establish that a discriminatory reason, as opposed to PSI's proffered legitimate reason, more likely motivated the termination decision. This argument is without merit under the same rationale as that just discussed, *i.e.*, her denial of culpability does not bear on the question of pretext as it does not constitute evidence from which a rational factfinder could find that PSI lied about its proffered reason for terminating her.

C.

Finally, Versa argues that the trial court erred in finding that PSI's proffered reason for terminating her was a sufficient reason to do so. More specifically she argues (1) that Gard was not terminated for signing an incorrect IA several years earlier; (2) that Karin Ware was not terminated for preparing an incorrect IA several years earlier; (3) that Gard advocated suspension rather than termination when Williams stated that she sent the falsified IA to her former husband's employer; and (4) that Welch violated company policy by leaving herself logged in when she left the office for the day.

We find and hold that the trial court did not err in finding that Versa failed to establish that PSI's asserted reason was insufficient to terminate her. As stated earlier, PSI has carried its burden on summary judgment of establishing that there is no genuine issue of material fact relating to the question of pretext. Thus, Versa has the burden of showing that a genuine issue of material fact exists. With respect to the sufficiency of PSI's proffered reason for termination, we find that Versa's asserted comparables are not sufficiently similar to establish pretext. First, Ware and Williams are, like Versa, African-American females, and therefore, any dissimilar treatment between Versa on the one hand and these two employees on the other would not tend to establish discrimination. Second, Versa has not shown, and we have been unable to find, proof in the record that the incorrect IA or IAs prepared and/or signed by Ware and Gard were the result of intentional acts. On the contrary, they seem to have been the result of inadvertence. Third, though Gard wished to suspend, rather than terminate, Williams for her intentional submission of an incorrect IA to her former husband's employer, Williams was in fact terminated. Finally, leaving the building for the day without logging out of the computer system is not substantially identical to intentionally deleting files. Accordingly, we find and hold that Versa has failed to carry her summary judgment burden of showing that there

is a genuine issue of material fact regarding the sufficiency of PSI's proffered reason for terminating Versa. The trial court was correct in granting PSI's motion for summary judgment.

IV.

The judgment of the trial court is affirmed. This case is remanded for collection of costs, assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellant.

_____
CHARLES D. SUSANO, JR., JUDGE