IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 7, 2001 Session

## F. RAY WHITE v. REGIONS FINANCIAL CORPORATION

**Appeal from the Circuit Court for Davidson County**
**No. 99C-263  Barbara N. Haynes, Judge**

---

**No. M2000-02957-COA-R3-CV - Filed November 15, 2001**

---

In this appeal from the Circuit Court for Davidson County, the Plaintiff/Appellant, F. Ray White, contends that the Trial Court erred in granting the Defendant/Appellee, Regions Financial Corporation, a summary judgment against him with regard to his cause of action for age discrimination under the Tennessee Human Rights Act. We affirm the judgment of the Trial Court and we adjudge costs of appeal against Mr. White and his surety.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, and D. MICHAEL SWINEY, JJ., joined.

Stanley A. Kweller, Nashville, Tennessee, for the Appellant, F. Ray White.

Barbara J. Moss, Nashville, Tennessee, for the Appellee, Regions Financial Corporation.

### OPINION

This case arises out of an age discrimination action filed by the Plaintiff/Appellant, F. Ray White, against his employer, the Defendant/Appellant, Regions Financial Corporation (hereinafter 'Regions'), in the Circuit Court for Davidson County. Mr. White contends that the Trial Court erred in granting Regions's motion for summary judgment. Because we find no evidence in the record that raises a genuine issue of material fact with respect to whether Regions engaged in acts of age discrimination against Mr. White we affirm the ruling of the Trial Court.

In April of 1994 Mr. White, then fifty six years of age, was hired by First Security Bank as a vice president in its department of sales and finance with regard to automobile loans. Mr. White was assigned an area of responsibility consisting of Nashville and that portion of Middle Tennessee within a one hundred mile radius of Nashville.

In April of 1997 Regions Financial Corporation took control of First Security Bank at which time First Security changed its name to Regions Financial Corporation. In the early part of 1997 Mr. White was advised that Regions would be consolidating its Nashville office with its other business offices and centralizing its automobile finance department in Birmingham, Alabama. As a consequence of this consolidation and centralization the automobile finance office in Nashville was to be eliminated. Accordingly, Regions offered Mr. White an alternative position in Nashville as a business development officer in automobile credit services. Mr. White accepted Regions's offer in March of 1997 and on June 26, 1997, he met with Charles Hall and Ronald Luth, two senior vice presidents for Regions to discuss the transition to his new position. In the course of this meeting Mr. White was advised that in his new job he would be responsible for developing business in the region of Nashville and Middle Tennessee expanding in the future to Chattanooga and Knoxville. Mr. White was also advised of the planned procedure for changing his compensation from salary to salary with commission. Finally, Mr. White was assigned sales goals of $3,000,000.00 per month for the first six months, increasing to $5,000,000.00 per month for the next six months, and then to $7,000,000.00 per month thereafter. Mr. White testified that, at the time of the meeting, he thought these sales goals were reasonable and reachable.

Mr. White concedes that over the next twelve months - July, 1997 to July, 1998 - he was not successful in any month in reaching the sales goals accepted by him at the meeting of June 26, 1997. During this period various discussions took place between Mr. White and Mr. Hall regarding the fact that Regions's sales expectations were not being met. Furthermore, while an annual review of Mr. White's performance prepared by Mr. Hall in November of 1997 showed that Mr. White's job performance was acceptable, it also noted the necessity of meeting the $3,000,000.00 per month sales volume level. Another review of Mr. White's performance was prepared by Mr. Hall in February of 1998 and in that review, although Mr. White was rated as exceeding requirements in most areas of performance, he was rated as needing improvement in the area of sales. The February review further noted that Mr. White had never met the minimum sales volume base of $3,000,000.00 per month.

On July 9, 1998, Mr. Hall and Mr. Luth met with Mr. White and presented him with a performance memorandum setting forth his monthly sales volume for the months of August, 1997 through June, 1998. The performance memorandum showed that, with respect to the eleven months covered, Mr. White did not reach sales of $2,000,000.00 in any single month and that, for five of the months shown, his sales were below $1,000,000.00 per month. Mr. Hall advised Mr. White at this meeting that if his sales volume did not increase to the previously assigned rate of $5,000,000.00 per month by September of that year, his employment with Regions would be terminated.

As of October 1, 1998, Mr. White's monthly sales volume had not increased to the level demanded by Regions and on October 2, 1998, Regions terminated his employment. Mr. White was sixty years of age at the time.

After Mr. White's termination the area of Tennessee which had been his responsibility was reassigned to Terrence Brown, another of Regions's business development officers, who was under

forty years of age at the time. As a result of this reassignment, Mr. Brown was now responsible for the Tennessee territory formerly covered by Mr. White as well as the area of Northern Alabama for which Mr. Brown had previously been responsible. Mr. Brown's sales goal for Northern Alabama was set at $7,000,000.00 at the time and was not increased by Regions when he was assigned the additional territory in Tennessee.

On January 29, 1999, Mr. White filed a complaint in the Circuit Court for Davidson County asserting that Regions had violated the Tennessee Human Rights Act by terminating him because of his age. Thereafter, on August 30, 2000, Regions filed a motion for summary judgment which was heard by the Trial Court on October 13, 2000. The Trial Court entered its order granting Regions a summary judgment on November 1, 2000, and on November 21, 2000, Mr. White filed his notice of appeal.

The Tennessee Supreme Court restated the standard of review with respect to summary judgments as follows in *Staples v. CBL & Associates, Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000):

> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must review the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. See *Robinson v. Omer*, 952 S.W.2d [423]at 426; *Byrd v. Hall,* 847 S.W.2d [208] at 210-211. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. See *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 Tenn.1995). [Case names not italicized in original].

A Trial Court's decision to grant a motion for summary judgment is solely a matter of law and is, therefore, not entitled to a presumption of correctness. See *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn.1995). In determining whether such a decision is appropriate we must review the record to determine if the requirements of Rule 56(b) of the Tennessee Rules of Civil Procedure have been satisfied in that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Mr. White's claim of age discrimination in this case is asserted under the Tennessee Human Rights Act which is codified at T.C.A. 4-21-101 *et seq.* At T.C.A. 4-21-401 the Act specifically provides that it is a discriminatory practice to discharge any person because of their age. Recognizing that the stated purpose of the Act, as expressed at T.C.A. 42-21-101(a)(1), is to provide for execution in Tennessee of the policies embodied in the federal civil rights laws, the Supreme Court of our state has determined that case law under Title VII of the Civil Rights Act of 1964 applies in analyzing claims brought under the Tennessee Human Rights Act. See *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), a case involving asserted violations of the Civil Rights Act of 1964, the United States Supreme Court presented the analytical framework to be applied in cases such as the one now before us, where allegations of discrimination are not based on direct evidence. Under the burden shifting analysis set forth in *McDonnell,* as applied to a cause of action for age discrimination, the plaintiff must establish a *prima facie* case by proving the following: (1) that he was at least forty years of age at the time of the alleged discrimination (2) that he was subject to adverse employment action (3) that he was qualified for the position and (4) that he was replaced by a younger person. See *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325 (6th Cir. 1994).

If the plaintiff is able to prove a *prima facie* case the burden then shifts to the defendant who is required to submit some legitimate, nondiscriminatory reason for its action. Once the defendant meets this burden the plaintiff is required to prove by a preponderance of the evidence that the reason proffered by the defendant for its action was not the actual reason, but was merely a pretext for illegitimate discrimination. The plaintiff is required to show pretext by establishing by a preponderance of evidence "either (1) that the proffered reasons had no basis *in fact* (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." See *Manzer v. Diamond Shamrock Chemicals Company*, 29 F3d 1078 (6th Cir. 1994), quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993), emphasis in *Manzer.*

Under the facts presented in this appeal, Regions maintains that Mr. White's employment was terminated, not because of his age, but because he did not meet previously agreed upon sales volume goals. In order to establish that Regions's explanation was pretext under the first of the three alternatives set forth above - 'the proffered reasons had no basis *in fact*' - Mr. White would be required to produce evidence that the proffered basis for his discharge did not occur. See *Manzer, ibid.* However, Mr. White concedes that his sales volume never met the goals which he and Regions agreed to. Accordingly, Mr. White does not establish pretext under the first alternative.

Under the second alternative for showing pretext - 'the proffered reason did not *actually* motivate the employee's discharge - Mr. White would be required to produce circumstantial evidence of age discrimination *in addition* to that necessary to produce a *prima facie* case. Under this alternative Mr. White must submit circumstantial evidence of age discrimination, the sheer weight of which would make it more likely than not that Regions's ostensible reason for terminating his employment was a cover up. See *Manzer, ibid.* From our review of the record we do not find that Mr. White has presented any circumstantial evidence of age discrimination that would show pretext under this second alternative.

It appears to us that Mr. White has chosen the third alternative for establishing pretext. This means of proving pretext - showing that the reason proffered was *insufficient* to motivate discharge - requires production of "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the

employer contends motivated its discharge of the plaintiff." See *Manzer, ibid.* In the case of *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th cir.1992) the Court noted as follows:

Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

See also, *Versa v. Policy Studies, Inc. ,* 45 S.W.3d 575 (Tenn. Ct. App. 2000).

As stated, upon terminating Mr. White's employment, Regions re-assigned his geographical area of responsibility, which was located in Tennessee, to Terrence Brown, another business development officer employed by Regions who was under forty years of age at the time. Mr. White asserts, and the record confirms, that, although Mr. Brown also failed to meet the sales goals set for the same area of Tennessee, Mr. Brown was not discharged. Mr. White further attests that he was not aware of any business development officer either at Regions or at any other bank where he had worked in the past, who had been terminated for failing to meet sales performance goals. Mr. White argues that this evidence, coupled with the fact that he was the oldest and highest paid business development officer at Regions at the time, is sufficient for a jury to infer that he was terminated because of his age and that the reason for his discharge presented by Regions was pretextual. We are compelled to disagree.

A comparison of Region's treatment of Mr. White with its treatment of Mr. Brown will not suffice to create a genuine issue with respect to whether Regions's proffered reason for discharging Mr. White was a pretext because these two employees were not similarly situated.

To begin with, the territory assigned to Mr. White with respect to which he failed to meet his sales goals consisted solely of Middle and Eastern Tennessee. When Mr. Brown failed to meet the same sales goal for that region of Tennessee he was additionally responsible for his original sales territory in Northern Alabama. Therefore, while Mr. White was in a position to devote all of his time to the Tennessee region assigned to him, Mr. Brown was necessarily allocating his time between Tennessee and Northern Alabama. Mr. Brown's unrefuted testimony is that only thirty five to forty per cent of his time was apportioned to Tennessee and the remainder of his time was devoted to Northern Alabama.

In addition, Mr. White never met the assigned sales goal for his territory for *any* month during the fifteen months of his employment as a business development officer. In contrast, although Mr. Brown did not meet his sales goals for the first six months of 2000, he testified without contradiction that he did meet his sales goals for seven to eight months of 1999. We recognize that Mr. Brown's monthly sales goal of $7,000,000.00 for Northern Alabama was not raised by Regions when he assumed Mr. White's territory and that this goal was, then, arguably easier to reach because of the greater potential of his now expanded territory. However, Mr. Hall testified without contradiction that, subsequent to Mr. White's termination, the Tennessee region formerly assigned

to Mr. White has generated maximum monthly sales in the range of $2,000,000.00 to $3,000,000.00. The record shows that Mr. White's maximum sales for that same region never reached $2,000,000.00 per month.

Finally, Mr. White's salary at Regions at the time of his discharge was $60,000.00 per year whereas Mr. Brown's annual salary at that time, and throughout 1999, remained less than $40,000.00 per year. Mr. White presents the disparity between his salary and that of Mr. Brown as circumstantial evidence that the actual reason for his discharge was not his sales record but, rather, Regions's desire to replace him with a younger employee at a lower salary. It is our determination, however, that given the fact that Mr.White was not meeting Regions's sales expectations and had never met those expectations Regions made a legitimate non-discriminatory business decision when it terminated his employment and assigned his duties to another employee at a lower salary and Mr. White has not submitted any evidence to the contrary. The fact that Mr. White and Mr. Brown received substantially different salaries does, on the other hand, show that these two employees were not similarly situated and that they were, therefore, not comparable for the purpose of establishing that Regions's proffered reason for discharging Mr. White was insufficient.

Mr. White also attests that he is unaware of any business development officer who has been discharged by Regions for failure to meet sales performance goals and that he is further unaware that any other bank with which he has worked has discharged an employee in that position for failing to meet such sales goals. However, again, Mr. White has failed to demonstrate that any of these employees with whom he seeks to compare himself were similarly situated. For this reason, if no other, it is our finding that these assertions will not suffice to create a genuine factual issue as to whether Regions's proffered reason for terminating Mr. White's employment was pretextual.

It being our determination that Mr. White has not established a genuine issue with regard to whether the reason for his discharge by Regions was pretextual, we need not, and do not, determine whether Mr. White has submitted sufficient evidence to overcome a summary judgment with respect to establishing a *prima facie* case of age discrimination.

For the foregoing reasons we affirm the judgment of the Trial Court and remand the case for collection of costs below. Costs of appeal are adjudged against Mr. White and his surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE