IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 6, 2017 Session

## JOSEPH SWEAT v. CITY OF MCMINNVILLE

**Appeal from the Circuit Court for Warren County**
**No. 254     Larry B. Stanley, Jr., Judge**

_____

### No. M2017-01141-COA-R3-CV

_____

The plaintiff, a former firefighter with the City of McMinnville Fire Department, brought this retaliatory discharge claim against his previous employer under the Tennessee Public Protection Act. The City filed a motion for summary judgment arguing that the plaintiff was unable to prove that the City's proffered reason for the discharge was pretextual. Finding no genuine dispute, the trial court granted the motion and dismissed the complaint. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Todd G. Cole and Shea T. Hasenauer, Brentwood, Tennessee, for the appellant, Joseph Sweat.

Rachel M. Casias, Nashville, Tennessee, for the appellee, City of McMinnville, Tennessee.

### OPINION

On June 20, 2001, the City of McMinnville ("the City") hired Joseph Sweat ("Plaintiff") as a firefighter. In December 2013, Plaintiff, along with twenty-seven other firefighters, signed and presented a document to the McMinnville Human Resources Director outlining safety concerns in regard to the actions of Fire Chief Keith Martin ("Chief Martin"). Plaintiff also individually sent a handwritten letter detailing six complaints to the same Human Resources Director. This information was forwarded to Tennessee Municipal Fire Consultant, Dennis Wolfe, who conducted an investigation of the firefighters' concerns.

At the conclusion of his investigation, Mr. Wolfe determined that many of the firefighters' complaints did not rise to the level of safety violations. Furthermore, he did not find any evidence of illegal activity. He did, however, identify several safety concerns, such as deficiencies in operating procedures and training that were not addressed by the firefighters. Mr. Wolfe also identified issues with camaraderie within the fire department stemming from a poor working relationship between the firefighters and Chief Martin. Mr. Wolfe presented the findings of his report to City Alderman Mike Neal. After receiving this report, Mr. Neal engaged in a reorganization of the fire department that included terminating the employment of both Chief Martin and Plaintiff on March 20, 2014. Police Chief Bryan Denton ("Chief Denton") was then hired as the interim Fire Chief, a position he had held on three prior occasions.

Plaintiff filed a complaint against the City on February 13, 2015, in Warren County Circuit Court, alleging he was discharged in a retaliatory manner in violation of the Tennessee Public Protection Act ("TPPA"), also known as the Whistleblower Act. Upon the conclusion of discovery, Plaintiff filed a motion for summary judgment on December 8, 2016, arguing he established a *prima facie* case of retaliatory discharge under the TPPA. Specifically, he contended that he complained about safety issues that violated the law and that he was fired solely because he refused to participate in, or remain silent about, those illegal activities. On April 13, 2017, the trial court denied Plaintiff's motion for summary judgment, finding that genuine issues of material facts existed.

In the interim, the City filed its motion for summary judgment on January 5, 2017. The City argued that it terminated Plaintiff for reasons other than Plaintiff's complaints; specifically, Plaintiff's inability to work with effective leadership, for making sexually harassing phone calls from the firehouse to a private citizen, and going outside the chain of command. The City also asserted that Plaintiff was unable to show that any of these proffered reasons were pretextual. On May 9, 2017, the trial court granted the City's motion for summary judgment, finding "Plaintiff has failed to establish that the City's explanation of his discharge is pretextual or unfounded. There are no genuine issues as to any material facts, therefore, the Defendant (City) is entitled to summary judgment."

Plaintiff then timely appealed.

### ISSUES

The dispositive issue presented for our review is whether Plaintiff was terminated solely for engaging in activity protected under the TPPA.[1] Plaintiff argues that he was

---

[1] Plaintiff raised the following issues in his brief:

(continued…)

terminated solely because he refused to participate in, or remain silent about illegal activities. In response, The City argues that Plaintiff was fired because of his history of work-related misconduct and insubordination that adversely affected employee morale.

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264 (emphasis in original).

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* Instead, the nonmoving party must respond with specific facts showing that

---

I. Under Tenn. R. Civ. P. 56.04, should the Circuit Court's grant of Appellee's Motion for Summary Judgment be reversed because there was a genuine issue of material fact as to the Appellant's Tennessee Public Protection Act ("TPPA") claim?

A. Could a reasonable trier of fact find that the Appellant refused to participate in or remain silent about illegal activity?
B. Could a reasonable trier of fact find that the Appellee terminated the Appellant's employment solely because the Appellant refused to participate in or remain silent about the illegal activity?

The City asserts the only issue is as follows:

I. Under Tenn. R. Civ. P. 56.04, should the Circuit Court's grant of the Appellee's Motion for Summary Judgment be upheld because there was not a genuine issue of material facts as to the Appellant's Tennessee Public Protection Act ("TPPA") claim.

there is a genuine issue for trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

## ANALYSIS

### I. TENNESSEE PUBLIC PROTECTION ACT

The TPPA provides in pertinent part:

(b) No employee shall be discharged or terminated *solely* for refusing to participate in, or for refusing to remain silent about, illegal activities.

(c)(1) Any employee terminated in violation of subsection (b) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled, subject to the limitations set out in Tenn. Code Ann. § 4-21-313.

Tenn. Code Ann. § 50-1-304 (b)-(c)(1) (emphasis added).

A claim under the TPPA differs from a common-law retaliatory discharge claim in two respects. First, the common-law cause of action is only available to private-sector employees, whereas the TPPA also extends protection to public employees. *Williams v. City of Burns*, 465 S.W.3d 96, 110 (Tenn. 2015) (citing *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002)). Second, the TPPA places a higher burden on the plaintiff. Under the common law, a plaintiff is only required to show that retaliation for protected conduct was a "substantial factor" motivating the termination of the plaintiff's employment. *Id.* To prevail under the TPPA, the plaintiff must prove that retaliation for engaging in protected conduct was the "sole reason" behind the employer's decision to terminate the plaintiff. *Id.*

A plaintiff asserting a claim under the TPPA must prove four elements:

(1) the plaintiff was an employee of the defendant;
(2) the plaintiff refused to participate in or remain silent about illegal activity;
(3) the defendant employer discharged or terminated the plaintiff's employment; and
(4) the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity.

- 4 -

*Id.* at 111 (Tenn. 2015) (citing *Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 26-27 (Tenn. 2011)).

These essential elements are assessed under the statutory burden-shifting framework provided by the TPPA "to be applied to all claims under the TPPA, both for summary judgment motions and for trial."[2] *Williams*, 465 S.W.3d at 112 n.15 (citing 2011 Tenn. Pub. Acts ch. 461). Tenn. Code Ann. § 50-1-304(f) calls for a three pronged analysis, which we summarize as follows:

(1) First, the plaintiff has the burden of establishing a prima facie case of retaliatory discharge by a preponderance of the evidence;

(2) If the plaintiff establishes a prima facie case for retaliatory discharge, the defendant must produce evidence of one or more legitimate, non-retaliatory reasons for the discharge. This is a burden of production, not persuasion;

(3) If the defendant produces evidence of a non-retaliatory reason for the discharge, the plaintiff's prima facie case is rebutted, and the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was only pretext for unlawful retaliation.

This statutory burden-shifting framework is "virtually indistinguishable from the *McDonnell Douglas/Burdine* [burden-shifting framework]." *Williams*, 465 S.W.3d at 112

---

[2] Our Supreme Court in *Williams v. City of Burns*, 465 S.W.3d 96, 112 n.15 (Tenn. 2015) states that "[i]n 2011, the Legislature amended Section 50–1–304 to add a subsection (g), that set forth a statutory burden-shifting framework to be applied to all claims under the TPPA, both for summary judgment motions and for trial. 2011 Tenn. Pub. Acts ch. 461 (enacted, effective June 10, 2011)." The footnote goes on to read:

> The statute was amended in response to this Court's decision in *Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 785 (Tenn. 2010) (holding that "the *McDonnell Douglas* burden-shifting framework is inapplicable at the summary judgment stage because it is incompatible with Tennessee summary judgment jurisprudence" set out in *Hannan v. Alltel Pub'g Co.*, 270 S.W.3d 1, 8–9 (Tenn. 2008)). In the second appeal in this case, following the trial, the Court of Appeals indicated that the statutory framework found in the amended TPPA applied at trial in this case. *Williams*, 2013 WL 4068180, at *2. This was error, because Captain Williams' claim arose well before the 2011 effective date of the amendment. However, because the analytical framework set forth in the amended TPPA is virtually indistinguishable from the *McDonnell Douglas/ Burdine* approach, the Court of Appeals' error made no real difference in the analysis. We note that *Gossett* changed only the standard applicable to summary judgment motions, not the analytical framework to be applied at trial. *Gossett*, 320 S.W.3d at 785.

*Williams*, 465 S.W.3d at 112 n.15.

n.15. However, the second prong of the framework must be "refined" when applied to a claim under the TPPA. *See id.* at 115. Under the TPPA, if the plaintiff succeeds in establishing a *prima facie* case of retaliatory discharge, the defendant need not proffer evidence that unlawful retaliation played no part in its decision to terminate the plaintiff. *Id.* Rather, the defendant need only produce "admissible evidence showing that unlawful retaliation was not the *sole* cause of the employment action." *Id.* (emphasis in original). Further, the defendant's proffered non-retaliatory reason for the discharge "need not be a sound one; it need only be a reason *other than* retaliation." *Id.* at 115 (emphasis in original). At all times, the plaintiff bears the ultimate "burden of persuading the trier of fact that the plaintiff has been the victim of unlawful retaliation." Tenn. Code Ann. § 50-1-304(f).

## II. APPLICATION OF TENNESSEE PUBLIC PROTECTION ACT BURDEN SHIFTING

Once a plaintiff establishes a prima facie case of retaliatory discharge and a defendant proffers some legitimate, non-discriminatory reason for the discharge, "the [TPPA] burden-shifting framework falls away and the trier of fact is left to determine the ultimate question of retaliation." *Williams*, 465 S.W.3d at 118 (quoting *Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir. 2003)) (internal alterations omitted). "The question is not whether the employer's decision was sound, but whether the employer's asserted reason for the adverse employment decision is pretextual." *Id.* at 119 (quoting *Versa v. Policy Studies, Inc.*, 45 S.W.3d 575, 581 (Tenn. Ct. App. 2000)). "Pretext is typically shown in one of three ways: (1) by establishing that the employer's proffered reasons have no basis in fact, (2) by establishing that the proffered reasons did not actually motivate the discharge, or (3) by establishing that they were insufficient to motivate the discharge." *Id*. In other words, to establish pretext, an employee must show that "the employer lied about the reason it gave for terminating the plaintiff's employment, in order to mask its true retaliatory motive." *Id*.

Here, **t**he trial court relied on *Versa v. Policy Studies, Inc.*, to hold that Plaintiff could not meet his burden of establishing that the City's proffered reasons for his termination were pretextual. The trial court's order, in relevant part, reads:

> The Plaintiff must produce evidence that the [defendant] lied about its proffered reasons for dismissal. In this matter there were twenty-six other firefighters who reported the same issues that the Plaintiff did concerning the fire chief and were not terminated. The City contends that Plaintiff was terminated because of several issues including: the Plaintiff's inability to work with effective leadership, for making sexual harassing phone calls from the firehouse to a private citizen, and going outside the chain of command. The Plaintiff has several written reprimands for violating City policy.

Plaintiff argues that the trial court erred in its grant of summary judgment because there is a genuine issue of material fact as to whether the City's proffered reasons for terminating Plaintiff's employment were pretextual. Plaintiff supports his argument with three key facts: the City had previously given Plaintiff awards commending his job performance; the temporal proximity between when he filed complaints against Chief Martin and when he was terminated; and Plaintiff submitted a handwritten letter detailing six complaints, in addition to the complaint signed by twenty-seven other firefighters. Collectively, Plaintiff argues that these facts show that a genuine issue of material fact exists as to whether the City's proffered reasons for his termination were pretextual. Conversely, the City contends there are no genuine issues of material fact and Plaintiff failed to show that a reasonable trier of fact could determine the City's proffered reasons for his discharge (1) have no basis in fact, (2) did not motive Plaintiff's discharge, or (3) were not sufficient to motivate Plaintiff's discharge. Accordingly, we will analyze each factor.

## A. Factual Basis for Termination

An employer's proffered reasons have no basis in fact when the decision to terminate the employee was based on facts that were not true. *Williams*, 465 S.W.3d at 119 (citing *Versa*, 45 S.W.3d at 581).

In his deposition, Plaintiff admitted to calling the McMinnville 911 center in 2011 to complain about the city's policies for dispatching emergency services. Plaintiff does not dispute that he received a reprimand from Chief Denton, interim fire chief at the time, for violating policy by going outside the chain of command. Rather, Plaintiff contends that the reprimand was only a "coaching session" and not a violation of policy. Regardless of his interpretation of the "session," Plaintiff testified that he did receive a reprimand and that he signed it.

Plaintiff additionally admitted to making a phone call from the fire house to a woman whose name and phone number he had gotten off the internet. Chief Denton testified that Plaintiff had made phone calls from the fire house to a woman. Chief Denton further testified that the phone calls were inappropriate and ironically, were calls made to his nephew's girlfriend. Chief Denton, who was serving as Chief of Police at the time, stated that he called the current fire chief, who agreed to handle the situation.[3] Although Plaintiff never acknowledged that he made sexually harassing phone calls, he admitted in his deposition that at one time, firefighters kept a "list on the desk of the fire station" containing the names of single women that they had gotten off the internet, and that he called one of these women "to talk." Furthermore, Plaintiff testified,

---

[3] It appears Chief Denton talked to Chief Lawrence, but this fact is not entirely clear from the record.

Chief Lawrence called me into his office and asked if I had made a phone call to a woman who had called in and said that somebody had called her. And from my perspective at the time, there were some guys, and I don't know who they were, but they were getting online or getting singles or names of women online somehow.

And they had left a list there on the desk at the fire station, and I was wrong. I -- I called a person. I called her and -- and I don't know if this was me because like I said, others were calling and the chief didn't know who was calling. He was guessing. So this could have been me that made that phone call to that woman, but it was, you know, to talk and she didn't want to talk. So I politely excused myself, but if it was her, she called the chief.

And I know I wrote I'm innocent here, but I could have been guilty.

Plaintiff puts forth no evidence to establish that either incident did not occur or that either was "based on facts that [were] not true." *Williams*, 465 S.W.3d at 119.

### B. Reasons for Plaintiff's Discharge

To show that the employer's proffered reasons did not motivate the discharge, an employee may "either produce evidence that the adverse employment decision was more likely motivated by retaliation or 'show that the employer's explanation is not credible.'" *Williams*, 465 S.W.3d at 119 (quoting *Versa*, 45 S.W.3d at 581).

To challenge the City's assertion that Plaintiff was terminated for prior misconduct and insubordination, Plaintiff points to the fact that he was the valedictorian of his Recruit-Firefighter I Class and received the Firefighter of the Year award in 2009, among other accomplishments. He also argues that the City's proffered reasons are pretext because the misconduct and insubordinate behavior alleged by the City occurred years prior to Plaintiff's termination, whereas Plaintiff's protected activity occurred approximately three months before his termination. The City responded to these conclusory allegations with the following facts.

In Alderman Neal's deposition, he testified that before Chief Martin was terminated, Chief Martin provided a list of potential firefighters he believed should be fired. Alderman Neal conducted an investigation into the names Chief Martin provided and after consulting with Chief Denton and Human Resources Administrator Jennifer Rigsby, Alderman Neal made the determination to terminate Plaintiff and one other firefighter. Notably, the other twenty-six firemen who signed the petition along with Plaintiff were not fired.

- 8 -

Both Chief Denton and Ms. Rigsby testified that they supported Plaintiff's termination as a way of improving morale in the fire department. They both also provided reasons unrelated to Plaintiff's protected activity to support his termination. Moreover, during his previous tenure as interim fire chief, Chief Denton had counseled Plaintiff for going outside the chain of command. Chief Denton stated that he had also been informed by other firefighters that Plaintiff conducted himself in an unprofessional manner in public. Ms. Rigby testified that she supported Plaintiff's termination because of his work-related misconduct and unprofessional behavior that she became aware of in her capacity as the McMinnville Human Resources Coordinator.

Alderman Neal, Chief Denton, and Ms. Rigsby provided detailed reasons for Plaintiff's termination, all of which were unrelated to activity protected by the TPPA, and Plaintiff has failed to establish that the testimony of Alderman Neal, Chief Denton, and Ms. Rigsby "[was] not credible" or that their decision to terminate Plaintiff was "more likely motivated by retaliation." *Williams*, 465 S.W.3d at 119.

## C. Sufficiency of Reasons for Plaintiff's Discharge

To show that an employer's proffered reason for an employee's discharge is insufficient, "the employee must produce evidence that other employees who engaged in substantially the same non-protected conduct were not fired." *Williams*, 465 S.W.3d at 119. Plaintiff argues that he is uniquely situated because he submitted a handwritten letter detailing six complaints in addition to the complaint submitted by twenty-eight firefighters. This argument is misplaced because the focus in this prong of the TPPA pretext analysis is on *non-protected* conduct. The non-protected work-related conduct Plaintiff engaged in was, *inter alia*, repeatedly going outside of the chain of command, unprofessional conduct in public, and adversely affecting employee morale. Significantly, Plaintiff has failed to produce evidence that other firefighters who engaged in similar work-related misconduct were not terminated. *See id.* Therefore, Plaintiff has not established that "other employees who engaged in substantially the same non-protected conduct were not fired." *Id.* In fact, of the twenty-eight firefighters who complained to the McMinnville City Council about Chief Martin, only Plaintiff and one other were terminated. Significantly, the other firefighter who was terminated also had a history of work-related misconduct and insubordination.

Finally, unlike a traditional case under the TPPA, where an employee files a complaint against a supervisor and is terminated, while the supervisor remains employed, the City terminated *both* Plaintiff and Chief Martin. This provides further proof that Plaintiff's termination was not retaliatory, but was rather an effort by the City of McMinnville to improve the morale and functioning of its fire department.

In weighing the evidence in the light most favorable to Plaintiff, we conclude that no reasonable trier of fact could find that Plaintiff's protected activity under the TPPA was the *sole* reason for his discharge.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against appellant.

_____
FRANK G. CLEMENT JR., P.J., M.S.